THE CITY OF HUTCHINSON v. GEORGE W. WHITE.

No. 15,967.

SYLLABUS BY THE COURT.

CONTRACTS—*Error in Specifications—Compensation for Extra Work—Authority.* · A city of the second class let a contract for the construction of a drainage canal according to plans and specifications prepared by its engineer, which were made a part of the contract. The specifications gave the dimensions of the canal, and contained a statement that the excavated dirt should be deposited on the banks of the canal within a specified space. It was subsequently ascertained that the space designated would not contain the dirt, but the contractor, relying upon the specifications, had filled the space therein named, and was compelled to move the remainder over and beyond that which had already been deposited, causing much additional labor to what would have been necessary if the mistake in the specifications had been discovered earlier. The contract contained a clause that the sum therein stipulated was the limit of the city's liability and

nothing would be allowed for extra work unless authorized in writing by the city council. No such writing was made. The contractor claimed pay for the extra labor in moving dirt. *Held,* that he can not recover.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed April 10, 1909. Reversed.

### STATEMENT.

THE city of Hutchinson desired to construct a drainage canal, and caused its engineer to make plans and specifications therefor. It then invited bids for doing the work. The construction of the canal was awarded to the defendant in error, George W. White, who entered into a written contract a clause of which reads:

"Witnesseth: That said party of the first part, for and in consideration of the covenants and agreements and payments to be made as hereinafter set forth, hereby covenants and agrees with said party of the second part to dig and construct a drainage canal, and properly dike the same, within the city of Hutchinson, according to certain plans and profiles . . . of the city engineer of said second party, now on file in the office of the city clerk of said second party, which plans and profiles are hereby referred to and made a part hereof; and to do all of said work and construction and to be governed in all respects and in the fulfilment of this contract in accordance with the specifications hereto attached, marked 'Exhibit A' and made a part hereof.

"In consideration of which party of the second part covenants and agrees to pay to party of the first part for same the sum of eleven and nine hundred and ninety-nine one-thousandths cents for each cubic yard of earth excavated and placed according to such plans, specifications and profiles, and to make said payments either in warrants or bonds of said second party, at the option of the second party, as set forth in said 'Exhibit A,' hereto attached."

The specifications, under the head of "Instructions to Bidders," in part read:

"It is the intention of these specifications to provide for these improvements in a complete, thorough and

Hutchinson v. White.

workmanlike manner. The contractor or contractors to whom the work is awarded shall furnish all materials, labor and appurtenances necessary to properly complete the work, in accordance with these specifications, and anything omitted herein which may be reasonably interpreted as necessary to such completion, the council being the judge, is to be merged in the prices bid for these improvements. No bid will be accepted which does not contain an adequate or reasonable price for each and every one of the following, items. Bidders must satisfy themselves by personal examination of the location of the proposed work and shall not at any time after the acceptance of the bid dispute or complain, nor assert that there was any misunderstanding in regard to the nature of the work to be done."

Under the head of "Excavation" is the following clause:

"The contractor or contractors will be required to remove all earth necessary to bring the bed of the canal to grade, the bottom of which shall be not less than 150 feet wide, with side slopes at an angle of $1\frac{1}{2}$ to 1, which earth shall be deposited on the 50-foot right of way on either side of the said canal; this to be done all along the route, with one exception: Where a free haul will be required to bring the embankment of both sides of the canal to an elevation five feet above canal grade, said embankment to have a crown of not less than ten feet in width."

Under the head of "Extra Work" there is a clause which reads:

"No claim whatever will be made by the contractor or contractors for extra materials or work, or for a greater amount of money than is herein stipulated to be paid, unless some changes or additions to said work requiring additional outlay by the contractor or contractors shall first have been ordered in writing by said city council, said writing to be attached to the contract for the making of said improvements and stating that such work was not included in the contract, what the extras are, and that such are necessary for the proper completion of the work, or for the security of the work previously done, and the reason therefor; provided, however, that the city council or their legally authorized

committee may order 'extras' to the maximum amount of $500 in the execution of this contract."

After the work had proceeded the contractor concluded that the fifty-foot strip of ground on each side of the canal upon which the dirt as excavated was to be deposited was insufficient to hold it, and called the attention of the engineer to such conclusion. The engineer, however, did not agree with the contractor. Later it was discovered that the contractor was correct, and a conference was had by the council, contractor, and engineer. In the talk it was decided that the city should dispose of a large quantity of dirt in grading certain streets, which would probably make use of the surplus. The engineer and the contractor differed as to the amount of dirt there would be in excess of what could be deposited on the bank of the canal as originally designed, and it was finally decided that the surplus dirt, whatever the amount, should be deposited on and along the fifty-foot strip, which was done. No official action was taken by the council, and nothing was reduced to writing upon the subject. The removal of the extra dirt was done after the embankment on each side of the canal had been made, and cost more than if it had been done as the work progressed.

After the canal was completed the contractor demanded pay for the removal of the extra dirt in addition to the contract price for which the whole work was to be done. The city refused to pay, and after a fruitless attempt to settle the matter this action was brought in the district court of Reno county, where the plaintiff recovered $2970, and the city prosecutes error.

*A. C. Malloy,* for the plaintiff in error.
*Frank L. Martin,* for the defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The chief controversy presented here is the contention on the part of the city that the claim of the plaintiff is for extra work, the recovery of which is

barred by a clause in the specifications requiring all such work to be authorized by the city in writing, which clause by adoption became a part of the contract. .The contractor insists that the work was not extra work in that sense, but was work made necessary by an error in the specifications, and work which was impossible of performance under the contract.

It is clear that the city engineer miscalculated the space necessary to receive the dirt taken from the canal. This, however, was a mere error in mathematics. The data from which the computation was made clearly appeared in the plans and specifications, from which the contractor made the calculations upon which his bid necessarily depended. This was a matter as open to the contractor as to the city engineer. The bidders were especially warned to inform themselves fully of the work to be done and thereby avoid mistakes and disputes afterward. The dimensions of the canal and the size of the dumping-ground were each clearly and definitely stated. It was expressly mentioned in the specifications that the amount stipulated in the contract must cover all expenses unless otherwise agreed in writing. These statements and conditions were sufficient to notify the bidders and contractors that they must ascertain in advance what was contemplated by the city in its plans and specifications, as they would be held strictly to a performance of all the work necessary to complete the canal. A careful contractor would have ascertained whether the fifty-foot strip reserved for the dirt excavated was sufficient or not. When the contractor discovered that it was insufficient the question should have been settled by the parties in the manner provided in the contract. The canal, as finally constructed, was just as the contractor and the city contemplated when the contract was entered into. Each party knew the dimensions of the canal, and by a proper use of ordinary mathematics could have ascertained how much dirt would have to be

Hutchinson v. White.

excavated and how much space it would occupy when removed. Whatever misleading or erroneous conclusions might be reached by either party in the manipulation of figures concerning these problems, the practical fact stood clearly before them that the contractor had agreed to excavate and remove all the dirt from the canal and deposit it upon the adjacent land. This was the work he undertook to do. Each of the parties understood this alike. Nothing could mislead them into a misconception or misunderstanding as to this proposition, and no mathematical measurement or estimate could affect the work to be done.

The contractor, by relying upon the accuracy of the city engineer's estimate of the space necessary to hold the excavated dirt, expended more time and labor than would have been necessary if this mistake had been known earlier. For this additional time and labor he claims compensation. It is insisted that where, as in this case, a party wishes to have work done according to plans and specifications which he prepares and makes a part of the contract he must be held to have warranted such plans and specifications to be correct, and the contractor may rely upon them and will not be liable for any damages which occur on account of errors therein. In support of this proposition the case of *Bentley and others v. The State*, 73 Wis. 416, is cited. That case does not apply to the facts here involved. There the contractor agreed to furnish the material and construct a building according to certain plans and specifications and under the direction of a superintendent. The kind of material was specified in the contract. The building was so constructed, accepted, and paid for. Soon afterward it fell, not on account of the failure of the contractor in any respect, but because the material and manner of construction, as prescribed in the plans and specifications, were defective. The contractor, at the request of the state, restored the building according to amended speci-

fications, and upon the refusal of the state to pay him therefor he commenced an action in which he recovered, the court holding that the state, and not the contractor, was responsible for the collapse of the structure.

A man has the right to build a house or construct a drain on any plan that suits him, and if he furnishes the plan and prescribes the material, and employs a mechanic to do the work as directed, it is the duty of the man so employed to obey orders, even though he thinks the house will soon fall or that the drain will cause the water to flow the wrong way. In such a case the owner assumes the control and responsibility, and this is the rule that controlled the Wisconsin case. Here the situation is materially different. While the city furnished plans and specifications, they merely contained an outline of the work to be done. They contained nothing limiting the contractor in the manner of doing the work which could in any way affect the quality of the canal. The canal was completed in all respects as originally contemplated by the parties. No complaint is made by the city. The contractor, by reason of his reliance upon the mathematical calculations of the city engineer as to the space required for the dirt to be excavated, expended more time and labor than would have been necessary if the engineer's statement had been correct. The only question, therefore, which arises is, Shall the city pay for this extra work? Whatever may be said as to what the liability of the city would be under ordinary circumstances, the city expressly stipulated that no allowance would be made for extra work unless the council agreed to do so in writing; that in the absence of such writing the sum stipulated in the contract must be accepted as the limit of the city's liability. We think these provisions furnish a bar to the contractor's claim.

This applies to the claim for additional compensation for disposing of dirt outside of the fifty-foot strip only.

We are unable to ascertain from the abstracts just what was claimed in the petition. They indicate, however, that other issues were presented by the pleadings, but this question alone seems to have been presented to the jury and is the only matter presented here. The decision is therefore limited to this single question.

The judgment of the district court is reversed, with direction to proceed in accordance with the views herein expressed.