No. 28,747.

THE PEOPLES FINANCE COMPANY, and A. W. HERSHBERGER, Receiver of THE SECURED INVESTMENT COMPANY, *Appellants*, v. CLARK BURDG and JESSIE BURDG, *Appellees*.

(277 Pac. 796.)

Opinion filed June 8, 1929.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton* and *W. E. Stanley,* all of Wichita, for the appellants; *A. W. Hershberger, pro se.*

*Robert. C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris* and *George B. Powers,* all of Wichita, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs prosecuted this action to have judgment rendered against the defendants, declaring that they held the title to certain real property in Oklahoma in trust for the use and benefit of the plaintiffs; that the plaintiffs were the holders of the legal and equitable title thereto; and prayed that the defendants

be required to convey the property to the plaintiffs by deed free and clear of encumbrance. The defendants answered and alleged that the interest claimed to be owned by the plaintiffs in the real property had been acquired from the defendants through fraud practiced by the predecessors of the plaintiffs on the defendants, and filed a cross petition in which they asked that the plaintiffs be compelled to convey the real property by quitclaim deed to the defendants. A demurrer to the evidence of the Peoples Finance Company was overruled, but a demurrer to evidence of A. W. Hershberger, receiver, was sustained. Judgment was rendered "that the plaintiffs take nothing by their action and that the defendants have judgment against the plaintiffs for the costs of this action." The plaintiffs appeal.

The case was tried by the court without a jury. Special findings of fact and conclusions of law were made as follows:

"First: The Secured Investment Company was organized in 1923 with an authorized capital stock of $25,000. All of the capital stock was issued to the various incorporators, who gave their notes therefor.

"Second: Early in 1925 the bank commissioner of the state of Kansas directed that the capital stock be paid for in cash or its equivalent or that the company cease doing business. In order to comply with the requirements, the officers of the company interested Clark Burdg in the company, and for the purpose of influencing him in investing therein represented to him that the capital stock was fully paid up and worth its par value; that the company was in a good financial condition and was making money.

"That such statements were false and untrue and known to the officers of the said The Secured Investment Company to be false and untrue at the time they were made.

"Third: In reliance upon such statements, the defendants agreed to convey the real estate described as the southeast quarter (SE¼) of section twenty-one (21), township twenty-five (25), range four (4) west of the Indian meridian, Grant county, Oklahoma, owned by the defendant Jessie Burdg, which had a value of $14,000, for one hundred forty (140) shares of stock in the said The Secured Investment Company.

"In order to secure the one hundred forty shares of stock the owners of the stock transferred the same back to the company and received their notes which were executed to the company therefor.

"The defendants thereupon executed and delivered a warranty deed to said real estate to the said The Secured Investment Company and there was issued to Clark Burdg seventy-two (72) shares of stock, and sixty-eight (68) additional shares of stock were placed in escrow.

"Minutes of the said The Secured Investment Company do not disclose that the warranty deed was ever accepted by the corporation, and the evidence discloses affirmatively that the deed was never recorded.

"Fourth:. Clark Burdg was elected president of the said The Secured Investment Company on April 18, 1925, and exercised the usual functions of that office until June 15, 1925, when he resigned.

"Fifth: Prior to his resignation, Clark Burdg demanded a return of the deed to the real estate and offered to return the stock received by him, and it became necessary to secure other capital to permit the business to be continued.

"Additional capital was secured when D. F. Callahan and C. A. Gwinn gave a note for $7,200 and S. S. Williamson transferred a farm in Alfalfa county, Oklahoma.

"Sixth: On June 15, a director's meeting was held, the deed to the Burdg land returned to him and the resignation of Burdg accepted. The seventy-two shares of stock to him were indorsed and the certificate canceled. New directors and officers were thereafter elected and the company continued to operate until on February 11, 1927.

"Seventh: In reports to the banking department of the state of Kansas, after June 15, 1925, the Secured Investment Company listed the Williamson farm as an asset of the said The Secured Investment Company of the value of $13,000 and did not list the Burdg farm.

"Eighth: On February 11, 1927, on an application of the state of Kansas, the said The Secured Investment Company was declared insolvent and A. W. Hershberger was appointed receiver.

"The report and inventory of the receiver did not list the Grant county real estate as an asset, nor was any claim against the defendants until this suit was commenced.

"The receiver, by approval of the court, sold all of the assets of the insolvent company to the Peoples Finance Company, the conveyance reciting that it was the intention of the receiver to convey all of the property of the insolvent company as shown by the inventory.

"Ninth: The defendants have been in possession of the Grant county land since June of 1925, and have paid the taxes thereon.

"Tenth: In a proceeding in the receivership matter, S. S. Williamson sought to recover the Alfalfa county land and claimed in the proceedings that he had not received any consideration for the transfer of the land to the Secured Investment Company. The plaintiffs herein defended such proceedings and prevailed upon the proof that part of the Clark Burdg stock had been transferred to Williamson.

"CONCLUSIONS OF LAW.

"The plaintiffs are not entitled to recover herein and judgment should be rendered in favor of the defendants."

■ The plaintiffs complain of a number of matters which may be disposed of as one. They are as follows:

"As the defendant kept part of the consideration, he could not rescind."

"The representations of Williamson did not bind the corporation."

"The defendant, Clark Burdg, did not rely upon any representations made by Williamson."

The answer to these propositions is that by the action of the Secured Investment Company and the defendants, the entire transaction by which Clark Burdg became a stockholder in that company was rescinded. Whether or not he could have compelled rescission is not material.

■ Two matters complained of, as set out in other portions of appellant's brief, are as follows:

"Since the farm was listed as an asset of the company for the purpose of permitting the company to sell bonds under the blue-sky law, defendant cannot rescind."

"Under no circumstances can there be a rescission for subscription obtained by fraud after the company has become insolvent where the subscriber has been in active charge of the business of the company."

To permit the plaintiffs to prevail on either of these theories would be to justify and complete the fraud practiced on the defendants by the Secured Investment Company and its officers. The plaintiffs are not innocent purchasers or third parties in this transaction. They are assignees and successors of the Secured Investment Company and have no greater rights than that company.

The plaintiffs say that "mere surrender of deed does not transfer title back to grantor." That principle of law may be conceded, but it does not control in the present action because the plaintiffs are seeking to compel the defendants to execute a deed conveying the land to the plaintiffs. The defendants asked that the plaintiffs be compelled to execute to them a quitclaim deed conveying the property to the defendants. The defendants were not given any affirmative relief. The plaintiffs were denied the relief they asked. The judgment was for the defendants for costs. To compel the defendants to convey the property to the plaintiffs would be to justify and complete the fraud. The plaintiffs came into court without clean hands because they are the successors in interest of those who practiced the fraud on the defendants.

■ Two other propositions advanced by the plaintiffs are that—

"A Kansas corporation cannot purchase its own stock."

"By taking over the sixty-eight shares of stock, the defendant, Clark Burdg, became liable for the unpaid subscription therefor."

The Secured Investment Company did not purchase from the defendants its own stock. The transaction between that company and the defendants by which the stock that had been acquired by the latter was returned to the company, did not amount to a pur-

chase and sale of the stock. It was a mutual rescission of the transaction by which the defendants acquired that stock. Rescission annulled all obligations of the defendants.

■ The plaintiffs argue that the second, fifth, seventh and tenth findings of fact were wholly or in part not sustained by any evidence. The court cannot agree with the plaintiffs in this argument. The fifth, seventh and tenth findings of fact may be entirely eliminated because they are immaterial. The abstract of the evidence has been carefully examined. Evidence to support each of the first, second, third, fourth, sixth, eighth and ninth findings of fact, and every part of them, is disclosed in the abstract. It will not serve any good purpose to summarize or detail that evidence. It would make this opinion unnecessarily long to do so. Eliminating the fifth, seventh and tenth findings, it is sufficient to say that the remaining findings are a correct summary of the evidence on which the ultimate, controlling and necessary findings could have been properly based.

The judgment is affirmed.