No. 46,606

CLINTON C. MARKER, *Appellant*, v. PREFERRED FIRE INSURANCE COMPANY and ARNOLD JOHNSON, *Appellees.*

(506 P. 2d 1163)

Opinion filed March 3, 1973.

*Frank Rice*, of Topeka, argued the cause, and *Howard Jones, Gene E. Schroer*, and *Wilburn Dillon, Jr.*, of Topeka, were with him on the brief for the appellant.

*J. H. Eschmann*, of Topeka, argued the cause, and *L. M. Ascough* and *John A. Bausch*, of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover on an insurance policy for tornado damage which occurred to appellant's real property in the Topeka tornado of June 8, 1966. The appellant-plaintiff, Clinton C. Marker, is a lawyer and is also a licensed agent of the Preferred

Fire Insurance Company. The appellee-defendant, Arnold Johnson, is the owner of a general insurance agency and is also a licensed agent and director of appellee-defendant, Preferred Fire Insurance Company. After the completion of discovery the parties filed motions for summary judgment based upon the pleadings, depositions and affidavits on file in the case. The parties prepared a statement of uncontroverted facts which was filed with the district court along with the memorandum briefs of the parties. The district court overruled the motion of the plaintiff for summary judgment and sustained the joint motion of the defendants for summary judgment. The plaintiff has brought a timely appeal to this court.

The facts in the case are not greatly in dispute and are as follows: Prior to October 25, 1965, the real estate located at 1025 Jackson Street, Topeka, Kansas, was owned by Charles M. McDowell. On February 27, 1963, the defendant Preferred Fire Insurance Company through its agent Arnold Johnson issued a policy of fire and windstorm insurance covering the property for a term of three years running from February 27, 1963, through February 27, 1966. The named insured in the policy was Charles M. McDowell who paid the premium for the entire three-year period. This policy was identified in the record as Preferred Fire Insurance Company policy No. SMP 1056.

On October 25, 1965, Charles M. McDowell and his wife Vera entered into a contract for sale of the property to the plaintiff Clinton C. Marker and his wife Edythe. Mr. Marker as a practicing attorney prepared the contract. It specifically provided that the existing policy of insurance on the premises should be canceled and Marker agreed to obtain insurance coverage to protect the property.

Prior to the time the contract was executed, McDowell requested Marker to have Arnold Johnson look at the contract to see if it was all right. On October 25, 1965, Marker took the contract to defendant Johnson at his office and told him that McDowell wanted him to look at the contract. Johnson advised Marker that he was not an attorney but as a layman he would read the contract. Johnson after reading the contract told Marker that if McDowell wished to enter into such a contract with a low-down payment as provided therein and for the stated amount, he would not hesitate to sign it. It was at this point that the question of insurance coverage first came up. Johnson pointed out to Marker that it would be to McDowell's financial advantage for Marker to continue the current

policy in effect until the end of the term rather than it being subject to a flat cancellation. According to the statement of uncontroverted facts Johnson pulled the file on the property and pointed out to Marker that the policy would expire on the following February 26, 1966, some four months later, and inquired of Marker if he, Johnson, should renew this policy. At that time Marker advised Johnson that he would have his father write the policy and told Johnson, "Let me know when the expiration date is and I will have it renewed." In the course of the conversation Marker pointed out to Johnson that both he and his father were agents for Preferred Fire Insurance Company and Marker wanted his dad to write the policy or he was going to write it himself. Marker specifically stated he did not want Johnson to renew the policy. Marker testified that at the October 25 meeting between Marker and Johnson he, Marker, said "that at the time of the expiration for him to let me know, that I wanted my Dad to write it, and he agreed that he would do this. "

Marker then left Johnson's office and on the same date the contract for the sale of the property was executed by the Markers and the McDowells. McDowell turned over the original policy No. SMP 1056 to Marker for the purpose of having it placed in a safety deposit box. From that time on McDowell never saw the policy again. Several days later Marker sent McDowell the amount of unearned premiums which was $72.

On November 5, 1965, Marker and Johnson had a telephone conversation in which Marker advised Johnson that he and McDowell had executed the contract for the purchase of the property at 1025 Jackson and that Johnson should add an endorsement to policy No. SMP 1056 by adding the names of Clinton C. Marker and Edythe Marker as purchasers under contract. There is a dispute between Marker and Johnson as to whether the expiration date was discussed again. Shortly after November 5, 1965, Johnson prepared an appropriate endorsement for the policy and sent it along with a copy of the policy to Marker. The endorsement added the names of Clinton C. Marker and Edythe Marker as additional named insureds under the policy. The copy of the policy which Johnson sent to Marker at that time showed that the expiration date of the policy was February 27, 1966. Marker and Johnson had no further conversation about insurance coverage on the property at 1025 Jackson Street.

In January 1966, about 30 days before the expiration date of policy No. SMP 1056, Johnson's secretary, Eunice Carter, in the course of normal office routine wrote Preferred Fire Insurance Company and requested renewal policies on a number of policies including policy No. SMP 1056. At that time Eunice Carter did not know that Marker had directed Johnson not to renew this policy. It was the normal routine at Johnson's office to obtain renewal policies and then forward them to each named insured for his approval. In response to the request of Eunice Carter, Preferred Fire Insurance Company on January 31, 1966, prepared policy No. SMP 1363 providing insurance coverage for the real estate at 1025 Jackson and forwarded this policy along with other policies to the Arnold Johnson Agency. Preferred Fire Insurance Company billed the Arnold Johnson Agency for all the policies including the renewal policy No. SMP 1363. When these policies were received by the Arnold Johnson Agency, Eunice Carter on behalf of Johnson countersigned all of the policies including policy No. SMP 1363 and placed the policies on Johnson's desk. At that time Johnson advised Eunice Carter that Marker had expressly instructed him not to renew the policy, that the existing policy was not to be renewed and that Mr. Marker would renew the policy himself and keep the commission. Johnson directed Eunice Carter to send policy No. SMP 1363 back to Preferred Fire Insurance Company for flat cancellation since it was not to have been written. The policy was then returned to Preferred Fire Insurance Company, canceled flat and on the next monthly billing, the Johnson Agency was given credit for the cancellation. At no time was policy No. SMP 1363 delivered to Marker, nor was he ever advised that there was such a renewal policy, nor was he ever billed a premium, nor has Marker ever tendered or paid a premium on this policy.

On June 8, 1966, the Topeka tornado struck and damaged the property at 1025 Jackson Street. Marker made a claim which was first reduced to a formal claim in writing on November 30, 1966, to Preferred Fire. At no time did Marker ever contact Johnson in regard to coverage on the property after the telephone call of November 5, 1965; nor did Marker ever pay any renewal premiums on any coverage after February 27, 1966. It is undisputed that Marker did not authorize Johnson or anyone else to renew the policy so as to provide insurance coverage after February 27, 1966. Marker in fact specifically directed Johnson not to renew the policy.

Immediately after the tornado of June 8, 1966, Mr. and Mrs. McDowell testified that they became aware that there was no insurance coverage on the property they were selling to Marker. Mrs. McDowell testified that Marker stated to them within a day or two after the tornado, "Damn, I forgot to renew the policy." Marker denied making such a statement. For the purpose of determining this appeal we will assume that the facts set forth above are true and where there is a conflict in the testimony we will accept the testimony of Mr. Marker. In construing the facts we will adopt all reasonable inferences in support of Mr. Marker's position.

The primary issue to be determined in this case is whether or not under the facts and circumstances the plaintiff Marker has a reasonable theory in law to place upon Johnson or the Preferred Fire Insurance Company, the obligation to pay for the loss which occurred to Marker's property as the result of the tornado. The district court rejected all of the plaintiff's theories of liability and entered judgment in favor of the defendants.

The first point raised by the plaintiff takes the position that the defendant Johnson is liable because he breached a contractual obligation to notify plaintiff Marker of the expiration date of the Preferred Fire Insurance Company policy No. SMP 1056. The thrust of plaintiff's argument is that if an insurance agent promises his client that he will notify him at the time a policy expires and fails to do so, then the agent is responsible to the client for any loss suffered. In support of this position plaintiff relies upon the well-established principle of law that an insurance agent or broker who undertakes to procure insurance for another and thereafter neglects or fails to do so, will be held liable for any damage resulting therefrom. There are a number of cases in Kansas which support this general rule. (*Keith v. Schiefen-Stockham Insurance Agency, Inc.,* 209 Kan. 537, 498 P. 2d 265; *Rezac v. Zima,* 96 Kan. 752, 153 Pac. 500; *Rosedale Securities Co. v. Home Ins. Co.,* 120 Kan. 415, 243 Pac. 1023; *Smith v. Hartford Fire Ins. Co.,* 120 Kan. 53, 242 Pac. 455; *Cushenberry v. Grecian,* 112 Kan. 778, 212 Pac. 681.) For many cases from other jurisdictions see the extensive annotation in 29 A. L. R. 2d 171.

The theory of liability in such cases is based upon contractual obligations arising out of the relationship of broker and insured. In determining the obligations of a broker to the insured the general rules pertaining to the law of contracts should be applied

including the cardinal rule that a binding contract can not come into existence unless there is a consideration for the same.

Where a broker is employed to procure insurance for a client, the decisions recognize the necessity of a consideration for the broker's promise in order for the broker to be bound thereby. Where there is no consideration passing to an insurance broker for his undertaking to procure insurance it is generally held that there is no liability for a failure to accomplish such procurement. The consideration which flows to the broker in return for his promise to procure insurance is said to be the expectation of the broker of receiving a commission or profit when the insurance policy is obtained. The agreement by the proposed insured to pay the premium and accept a delivered policy is a real and not just a technical consideration in exchange for the promise to procure insurance. (*Hause v. Schesel,* 42 Wis. 2d 628, 167 N. W. 2d 421; *Lawrence v. Francis,* 223 Ark. 584, 267 S. W. 2d 306.)

The obligation to procure insurance where a broker is employed to do so has been extended to situations where the broker undertakes to renew an existing policy on behalf of his insured. The consideration for the undertaking is the same as the consideration when an original policy is obtained which is, of course, the expectation of a commission by the broker and an obligation on the part of the insured to accept the policy and pay the premium therefor. The rule has also been extended to situations where a broker who has procured insurance for a client promises to give notice to the insured of the expiration date of the policy. Where the broker fails to do so and the insured relies on the broker's promise to his loss, the broker may be held liable for the loss resulting from the failure of the broker to notify the insured of the expiration date of the policy. (*Universal Underwriters Lloyds v. Sulik,* 301 S. W. 2d 690, [Tex. Civ. App. 1957.]; *Pesina v. Juarez,* 288 Minn. 379, 181 N. W. 2d 109.)

The plaintiff Marker relies on this line of cases as support for his position that defendant Johnson breached a contractual obligation in failing to notify the plaintiff Marker at the time of the expiration of the policy. A careful analysis of the rationale of those cases has led us to the conclusion that the principles of law applied there are not applicable to the factual situation presented in the case at bar. We have concluded that although Johnson may have agreed on Marker's request that he would let Marker know when the policy

expired at the time of expiration, there was no consideration for such a promise on the part of Johnson. Therefore no binding contractual obligation on Johnson to give notice of the date of expiration ever came into existence.

In every case where an insurance agent has been held liable for failure to procure insurance or renew a policy or give notice of the expiration date of an existing policy, the relationship of broker and client has been established with mutual obligations arising from that relationship. The obligation to renew a policy or to give notice of the expiration date of a policy has in each case been one obligation among others involving either a past or expected sale of a policy of insurance by the broker to the client and in each case the agreement of the parties has been supported by consideration running in favor of the broker. This is true with respect to all cases cited by the plaintiff in his brief. (*Universal Underwriters Lloyds v. Sulik,* supra; *Aresto v. Milie,* 184 Pa. Super. Ct. 114, 133 A. 2d 304; *Adkins & Ainley, Inc. v. Busada,* 270 A. 2d 135, [U. S. D. C. App. 1970]; *Shea v. Jackson,* 245 A. 2d 120 [U. S. D. C. App. 1968].)

When we turn to the factual situation presented in the case at bar it is clear that the relationship of broker and client never existed between the plaintiff Marker and the defendant Johnson. It is undisputed that Johnson never undertook to procure insurance coverage on behalf of Marker nor did Johnson agree to renew the existing insurance policy upon its expiration. The most that can be said is that Johnson stated he would let Marker know the expiration date some time around the date of expiration although the exact time was not clear. There was no consideration whatsoever running in favor of Johnson since Marker stated categorically that either he or his father would have the policy renewed. In that event the expectation of a commission on renewal by Johnson was nonexistent and we find no other conceivable consideration for any promise which might have been made by Johnson. It is important to emphasize in this case that the plaintiff Marker himself was a licensed agent of Preferred Fire Insurance Company. The record also shows that Marker owned other real estate and that his father had written insurance policies with Preferred Fire Insurance Company covering those properties. Marker himself could at any time have obtained insurance coverage simply by picking up the telephone and calling Preferred Fire Insurance Company. In that case any commission would have been his. Under all the circumstances we conclude that assuming there was a promise on the part

of Johnson to Marker to let Marker know that the policy was about to expire at the time of expiration, such promise was purely a gratuitous undertaking on Johnson's part and there was no consideration whatsoever passing between Marker and Johnson to serve as the basis for a binding contract between the parties. We therefore reject plaintiff's first point that Johnson is liable to him on a theory of contract.

The second point raised by plaintiff on this appeal is that defendants Johnson and Preferred Fire Insurance Company are liable for the tornado loss on a theory of promissory estoppel. The plaintiff's argument here is that where one person promises to do something and another relies on that promise to his detriment, the promisor should not be allowed to assert claims and defenses inconsistent with his promise. In support of this position the plaintiff relies upon section 90 of the Restatement of the Law, Contracts:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (p. 110.)

Section 90 of the Restatement of the Law, Contracts is cited in *Southwestern College v. Hawley*, 144 Kan. 652, 62 P. 2d 850, and in *Greiner v. Greiner*, 131 Kan. 760, 293 Pac. 759. In the more recent cases the doctrine set forth in section 90 of the Restatement of the Law, Contracts, quoted above has been designated as "promissory estoppel." Promissory estoppel differs from ordinary "equitable" estoppel in that the representation is promissory rather than to an existing fact. *Southeastern Sales & Service Co. v. T. T. Watson, Inc.*, (Fla. 1965.) 172 So. 2d 239. The cases hold that in order for the doctrine of promissory estoppel to be invoked the evidence must show that the promise was made under circumstances where the promisor intended and reasonably expected that the promise would be relied upon by the promisee and further that the promisee acted reasonably in relying upon the promise. Furthermore promissory estoppel should be applied only if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice. These principles are discussed in 28 Am. Jur. 2d, Estoppel and Waiver, § 48, where cases from many jurisdictions are cited. There are also extensive annotations on this subject in 115 A. L. R. 152 and in 48 A. L. R. 2d 1069.

We agree with the defendants Johnson and Preferred Fire that the facts and circumstances in this case do not justify the applica-

tion of the doctrine of promissory estoppel. In the first place there is no evidence whatsoever of any affirmative inducement or misrepresentation made by Johnson to Marker. The circumstances which brought about any promise of notification from Johnson arose from a rather casual request by Marker that Johnson should let Marker know the expiration date of the policy so that Marker could have it renewed. To this request Johnson allegedly responded, "I'll do that." The evidence falls far short of showing that Johnson intended or expected Marker to rely upon the promise or that Marker reasonably had the right to rely upon Johnson's promise. Furthermore a refusal to enforce the doctrine in this case would in no way sanction the perpetuation of a fraud or result in other injustice. It is also clear from the evidence that from the time the real estate contract was signed, plaintiff Marker had the original policy in his possession which clearly disclosed the expiration date. Furthermore another copy of the policy was mailed to Marker by Johnson after November 5, 1965, when Johnson executed the endorsement to the policy which added the names of Mr. and Mrs. Marker as additional named insureds. Johnson could reasonably have assumed that he was carrying out his promise to notify Marker of the expiration date of the policy when he mailed a copy of the policy to Marker. Also we again wish to stress the fact that Marker was an attorney and was himself a licensed agent for Preferred Fire Insurance Company. The promise of Johnson to advise Marker of the expiration date of the policy was a promise wholly without consideration and essentially was made as a mere accommodation to Marker. The terms of the policy were always within the knowledge of the plaintiff and if he failed to remember that the policy expired at a certain time before the tornado, it was his own negligence and not that of Johnson which prevented plaintiff from renewing his policy. (*Kimball v. Clinton County New Patrons Fire Relief A.*, 255 N. Y. S. 2d 366, 23 A. D. 2d 519.)

In *Shepard v. United States Fidelity & Guaranty Co.*, 210 Kan. 652, 504 P. 2d 228, the insured under an automobile insurance policy claimed an estoppel against the insurance company on the theory that there was a custom for the insured to get notice from the company that a policy was expiring. The plaintiff contended that since no notice was given and since he relied on that custom, the insurance company was estopped from denying insurance coverage. In *Shepard* the loss occurred four months after the insurance policy expiration date. At no time did the insured pay or tender a

renewal premium. In *Shepard* we rejected the theory of estoppel stating as follows:

> "We might add that even if there were otherwise grounds for invoking an estoppel theory, the appellant could hardly carry it so far as to give him immunity from the payment of a renewal premium for as long a period as four months. He was charged with knowledge of the expiration date of the policy held and the necessity of tendering a premium for renewal, at least within a reasonable time, whether he had notice or not." (p. 653.)

In the case at bar the policy of insurance No. SMP 1056 expired February 27, 1966. The loss occurred on June 8, 1966, over 100 days later. Under the rule applied in *Shepard* it is clear to us that the plaintiff Marker was charged with knowledge of the expiration date of the policy which he held in his possession and the necessity of a tender of a premium for renewal of the policy within a reasonable time. This is especially true in this case where the plaintiff Marker is an attorney and a licensed agent of Preferred Fire Insurance Company who owned a number of other properties insured under separate policies issued by Preferred Fire. Marker had no right to rely on Johnson to jog his memory. For these reasons we hold that the plaintiff Marker's claim of liability against defendants on the theory of an estoppel cannot be sustained.

In his third point the plaintiff contends that Preferred Fire Insurance Company did issue a renewal policy, No. SMP 1363, and that this policy provided insurance coverage for the tornado loss which occurred on June 8, 1966. As pointed out in the statement of facts set out heretofore, policy No. SMP 1363 was issued by Preferred Fire to cover the period from February 27, 1966, to February 27, 1969, under the following circumstances. This renewal policy was ordered by Eunice Carter, an employee of the Arnold Johnson Agency. The policy was ordered by Ms. Carter and mailed by Preferred Fire to the Johnson Agency under a mistaken belief that Marker wanted the policy renewed by Johnson. The evidence is undisputed that Marker expressly and unequivocally did not want Johnson to renew the insurance coverage on his property at 1025 Jackson. In fact the issuance of policy No. SMP 1363 was directly contrary to the express instructions of Marker to Johnson not to renew the insurance. When this policy was received by Arnold Johnson Agency and called to Johnson's attention, it was immediately discovered that this policy was ordered and issued by mistake. It was immediately canceled and returned to Preferred Fire Insurance Company. There is no contention that this policy was ever delivered to Marker, or that he ever accepted or paid the

premium for this policy or that he ever even knew it was in existence until after it was canceled and the loss occurred. The general rule of insurance law applicable is that even where a renewal policy is delivered by the insurance company to the insured, upon the expiration of a policy, without a request by the insured, it is merely an offer or proposal which must be accepted by the insured before a contract of insurance is effected. Couch on Insurance 2d, § 12.3; *Siewerdsen v. United States F. & G. Co.*, 184 Neb. 870, 173 N. W. 2d 27.) In this case the new policy was never delivered to Marker nor did he have any knowledge of its existence. Here there was never an offer and acceptance of a policy of insurance nor any meeting of the minds. No premium payment was ever tendered to Preferred Fire by Marker between February 27, 1966, and June 8, 1966, when the loss occurred.

Under the circumstances the rule to be applied is that set forth in 43 Am. Jur. 2d, Insurance, § 404:

". . . a policy that is withdrawn or recalled before it becomes effective does not require a notice of cancellation, and a policy procured without the authority of the insured may be repudiated by the insurer prior to its ratification by the insured . . ."

We have concluded that Preferred Fire policy No. SMP 1363 never became an enforceable policy of insurance since it was originally issued by mistake and contrary to the express instructions of plaintiff Marker and for the further reason that it was cancelled and repudiated by the insurance company prior to the time it was accepted by the insured. Under these circumstances no notice of cancellation to Marker was required since the policy never became a binding contract. It follows that plaintiff Marker is not entitled to recover on this theory against Preferred Fire Insurance Company.

The fourth point raised by the plaintiff is that there were genuine issues of fact existing which precluded the entry of summary judgment in favor of the defendants Johnson and Preferred Fire. We do not agree. All discovery had been completed. All persons who had any relevant knowledge about the case testified fully by way of depositions. Since all of the available facts were before the court, it was proper for the court to determine as a matter of law whether or not the plaintiff Marker had a valid claim against defendant Johnson and Preferred Fire. Under these circumstances the case was properly ripe for summary judgment.

We find no error in the court below. The judgment of the district court is affirmed.