No. 47,488

ALBERT OWENS, d/b/a OWENS PLUMBING AND HEATING, Parsons, Kansas, *Appellee,* v. CITY OF BARTLETT, Labette County, Kansas, *Appellant.*

(528 P. 2d 1235)

Opinion filed December 7, 1974.

*Richard C. Dearth,* of Jones and Dearth, Chartered, of Parsons, argued the cause and was on the brief for the appellant.

*John B. Markham,* of Parsons, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: An action was brought by the plaintiff, Albert Owens, to recover a balance due on a construction contract awarded to him by the City of Bartlett. The contract was for a water distribution system and the contract price was $21,303.00 to be paid in periodic payments as the work progressed. Suit was brought after completion of the project to recover a balance due of $2,751.30. Judgment for the amount claimed was entered after a trial to the court. The city appeals.

The contract entered into by the parties called for installation of underground water lines as well as the installation of certain fire hydrants and meter hookups. The contractor was required to provide and pay for all materials, labor, tools, equipment, water, light, power, transportation, superintendence, and all other services and facilities necessary to complete the work. The contract when executed contained the following provision to cover extra or additional work and changes:

"16. EXTRA AND/OR ADDITIONAL WORK AND CHANGES.—Without invalidating the contract, the Owner may order extra work or make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly. All the work of the kind bid upon shall be paid for at the price stipulated in the proposal (unless such prices were rejected at the time the proposal was accepted), or at the lump sum price agreed upon between the Owner and the Contractor, *and no claims for any extra work or materials shall be*

*allowed unless it is ordered in writing by the Owner or its authorized representative.* If the extra work shall be of the kind for which no price was stipulated in the Proposal, and the Owner and the Contractor cannot agree as to the fair value of such work prior to its performance, such work shall be performed and the Contractor will be paid the reasonable cost of the labor and materials entering permanently into the work as determined by the Owner's Engineer, plus 15 percent to cover the general expenses, including, without limiting, the cost of superintendence, overhead, insurance and bond; *but no claim for such extra work will be allowed unless the same was done pursuant to a written order as aforesaid.* The Contractor shall, when requested by the Engineer, furnish itemized statements of the cost of all extra work ordered and give the Engineer access to accounts, bills and vouchers relating thereto." (Emphasis added.)

As the work progressed extra work and materials were orally requested by the mayor including an extra fire hydrant, 600 feet of two inch pipe, and footings and lines to connect a water tower.

Both the city and contractor encountered difficulties in the course of the project. The contractor encountered rock which had to be broken up and removed from the ditches. Dirt or sand had to be hauled in to put under the water lines. The city ran short of money after issuing the maximum amount of revenue and general obligation bonds. It fell behind in the periodic payments required for work completed under the contract. The contractor held up work on the contract for three weeks. It was at this time that some discussion took place between the mayor and contractor concerning the payments and the removal of the rock.

The contractor testified that it was agreed the city would rent and furnish special equipment to remove the rock, that the labor for rock removal was to be paid for as an extra under the contract, but that the extras were not to be paid for until completion and final billing. The mayor, on the other hand, testified he never agreed "as mayor" that the city would pay for rock removal and he was never authorized by the city to do so. The city did, however, authorize him to rent the special equipment, an air compressor and jackhammer, in order to get the contractor back to work. This equipment was furnished to the contractor and used to complete the job.

It is clear that itemized statements were furnished covering labor for rock removal and $412.70 was paid by the city thereon. The original contract called for payments totaling $21,303.00. The amount to be paid at completion included an additional sum of $4,657.38 for extras of which amount $3,164.00 was for removal of

rock and $1,493.38 was for other extras about which there is no dispute. Accordingly the total amount due under the contract as claimed by the contractor was $25,960.38 of which $23,209.08 was paid. This left the balance claimed for which judgment was entered in the amount of $2,751.30.

After the water distribution system had been completed and all bills had been submitted to the city, the city attorney wrote a letter to the contractor Owens. The letter advised that the city was short of funds with which to pay its creditors for the project. A check for $6,919.18 was enclosed representing 71.55% of the total balance due the contractor including that claimed for rock removal. By implication at least the amount claimed by the contractor for rock removal was acknowledged as a debt of the city. The contractor did not agree to the reduction and this suit followed.

The entire thrust of the city's appeal is based upon the binding effect of the provision in the contract that no claim for extra work would be allowed unless done pursuant to a written order. It was admitted that no written order was received by the contractor as to any of the extras furnished.

Generally a stipulation in a public construction contract that claims for extra work or materials shall be allowed only if ordered in writing by the public entity is valid and binding upon the parties, and therefore, so long as such a provision remains in effect, no recovery can be had for extra work or materials furnished without a written order in compliance therewith. (*Hutchinson v. White,* 80 Kan. 37, 101 Pac. 458. See also *Burke v. Allegheny County, Aplnt.,* 336 Pa. 411, 9 A. 2d 396.) The stipulation in a public construction contract that extra work or materials must be ordered in writing can be avoided by the parties to the contract where their words, acts, or conduct would amount to a waiver or modification of such provision, or where the public entity by the acts or conduct of its proper officer or representative is estopped to rely on it. (*Watkins v. Carrig,* 91 N. H. 459, 21 A. 2d 591, 138 A. L. R. 131.) The cases which have recognized these rules of avoidance have been collected and may be found in 1 A. L. R. 3d, § 11, p. 1295, in the annotation, Public Construction Contract—Extras. See also Anno.—Consideration for Additional Pay, 12 A. L. R. 2d 78.

Under the doctrine of promissory estoppel a promise is binding and will be enforced when it is a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and

which does induce such action or forbearance and if injustice can be avoided only by enforcement of the promise. (*Kirkpatrick v. Seneca National Bank*, 213 Kan. 61, Syl. ¶ 1, 515 P. 2d 781. See also *Marker v. Preferred Fire Ins. Co.*, 211 Kan. 427, 506 P. 2d 1163.) The appellant correctly points out, however, that the ditching and removal of the rock was an obligation of the contractor under the original contract and the contractor's agreement to perform such an obligation would not normally amount to action of a substantial character not contemplated in the original contract. Accordingly it cannot be said that the promise of the city standing alone induced action or change of position which would make it inequitable not to enforce the promise.

In the case of *In re Estate of Dahn*, 204 Kan. 535, 464 P. 2d 238, this court points out:

". . . [T]he prevailing view in this country [is] that the performance or promise of performance of an act which the promisor is already bound to do does not constitute consideration so long as the original promise is still in effect. . . ." (p. 544.)

However, if the original provisions of the contract are mutually rescinded by agreement of the parties the contractor is then free of any obligation to obtain an order in writing for extra work or materials and is no longer obligated to perform the work for the amount specified in the original contract. Recision depends upon the intention of the parties as shown by their words, acts, or agreement. Parties to a contractual transaction may mutually rescind the transaction although neither party had a right to compel a recision. (*Peoples Finance Co. v. Burdg*, 128 Kan. 390, 277 Pac. 796.) In such a case the terms of the written contract may be varied, modified, waived, annulled, or wholly set aside by any subsequent executed contract whether such subsequent executed contract be in writing or parol. (*Gibbs v. Erbert*, 198 Kan. 403, 412, 424 P. 2d 276.)

It is generally recognized that the mere fact that extra work or materials have been done or furnished with the knowledge of the proper officer or representative of the public entity, without any objection on the part of such officer or representative, does not, standing alone, establish a waiver or modification of a stipulation requiring a written order for such work. (*Water Co. v. City of Wichita*, 98 Kan. 256, 158 Pac. 49.) However, a waiver or modification of such a stipulation may properly be found where it appears that the work or materials were orally ordered or authorized by the public entity through its proper officer or representative and

there are other circumstances tending to show an intention to waive or otherwise derogate from the stipulation on the part of the public entity. *Campbell Bldg. Co. v. State Road Comm.*, 95 Utah 242, 70 P. 2d 857. See also cases collected in 1 A. L. R. 3d, § 16 [c], p. 1306.

In the present case the parties, throughout the performance of the contract, entirely disregarded the stipulation. An extra water hydrant, 600 feet of pipe, footings and lines to a water tower were orally ordered and these resulted in extra work and materials furnished by the contractor over which there is no dispute. When rock was encountered in the ditching the city through its mayor agreed to and did arrange for special equipment which it rented at the city's expense. The removal of rock was treated the same as other extras. Itemized statements covering at least a portion of the completed extras were submitted by the contractor to the city and at least a portion of these were paid including several hundred dollars for the rock removal. The city explains the payment for the extras, other than rock removal, by saying the city council was advised of them and the minutes of their meetings ordered and directed payment therefor. Such action by the council after the extras had previously been authorized by oral communication of the engineer or mayor did not constitute compliance with the provision in the contract that no claim for extra work or materials shall be allowed "unless it is ordered in writing by the Owner [city] or its authorized representative." This same course of conduct was followed throughout the performance of the contract and the city entirely disregarded the stipulation for orders in writing.

In addition, waiver and modification of the stipulation as to rock removal appears to have occurred at a time when the city was in default on the periodic payments due under the contract for work previously completed. The contractor when confronted by the city's default in payments was justified in shutting down until payments were made. The job had been shut down for three weeks when the discussion was had and the agreement was modified as to extras. The city by its mayor agreed and did furnish special equipment at its own expense to assist in the ditching and removal of rock. The contractor testified and the trial court impliedly found that the contractor was to be paid for removal of the rock as an extra.

A promise to pay additional compensation to a contractor for the performance of an obligation to which he is bound by a contract may be enforceable where it is made in consideration of a waiver of a default by the promisee. (13 Am. Jur. 2d, Building and Construc-

tion Contracts, § 5, p. 9; 25 A. L. R. 1450, Consideration—Additional —Building Contract, VII, p. 1468.)

In *King v. Duluth, Missabe & Northern Ry. Co.*, 61 Minn. 482, 63 N. W. 1105, plaintiff was promised additional compensation for work he was already bound to do. The court stated that the original contract had not been rescinded when the promise to pay additional compensation was made and that generally there is not sufficient consideration to support a promise for additional compensation where the promisee is merely bound to carry out a pre-existing legal obligation. However, the court found that the defendant had been in default under the original contract and held that plaintiff's agreement to continue with work constituted a waiver of the defendant's default which was sufficient consideration to support the defendant's promise to pay additional compensation. (See also *Simons v. American Dry Ginger Ale Co., Inc.*, 335 Mass. 521, 140 N. E. 2d 649.)

The city asserts that the provision requiring written order for extra labor or material could not be waived or modified by the engineer or mayor without formal action of the council.

A public entity can act only through its officers or representatives and an officer cannot bind the city without authority to do so, however if such public entity has the authority to enter into the contract in the first place it may ratify a contract not previously authorized. (*Water Co. v. City of Wichita*, supra; *DuBois v. City of Galena*, 128 Kan. 253, 276 Pac. 802.) In the present case there can be no question that the city had authority to enter into the contract in the first place and did so. The provision relating to additional work and materials contemplated orders for extra work and materials. Claims for such could be allowed when ordered in writing by the "Owner [city] or its authorized representative." The mayor took an active part in the project, discussed matters with the contractor in an effort to get the project started again, arranged for the special equipment to be used in removing the rock and was the authorized representative of the city.

Although there is nothing in the record to show express authority given for him to waive or modify the provision in the contract for extras yet his actions so indicated.

In addition, the record shows that the city council authorized the mayor to rent the special equipment for removing the rock, something the contractor would have been obligated for under the

original contract. The city council acting in regular session took action and directed payment for portions of the cost of all of these extras including several hundred dollars for removing the rock. The payments were made in response to itemized statements.

When it became apparent that the city was short of funds to meet its obligations for the project it authorized an attorney to write to the creditors. In the letter that was sent to the plaintiff contractor no objection was made to his claim for rock removal. The letter from the attorney to the contractor enclosed a check for $6,919.18 which was the prorated portion (71.55%) of the balance due including the extras. The percentage of proration was the same as that of all other creditors.

Not only does it appear that the mayor was an authorized representative of the city as mentioned in the original contract but it appears also that the city by its subsequent actions ratified such waiver or modification by making partial payments for rock removal.

The trial court found that the defendant city was estopped in its proprietary capacity by receiving said benefits and improvements including the removal of rock and that it would be inequitable to deny payment for the extra benefits received.

The appellant city argues that the judgment for rock removal cannot be supported on the court's theory of equitable estoppel or upon promissory estoppel because such a theory is premised on the assumption that the contractor remained obligated under the original contract to complete the ditching and rock removal, and would not be liable except for the estoppel. The city further argues that under such theory the contractor must take some action or suffer some hardship by reason of the city's action or agreement other than that required in the original contract, and this he did not do.

The appellant's argument may be sound but the fact that erroneous reasons for its decision may be assigned by the trial court does not automatically require a reversal. The judgment of a trial court is to be upheld, if it is correct, even though the court may have relied upon a wrong theory or assigned an erroneous reason for its decision. (*Kirkpatrick v. Seneca National Bank*, supra; *Pierce v. Board of County Commissioners*, 200 Kan. 74, Syl. ¶ 4, 434 P. 2d 858.)

In summary we hold that the words, acts, and conduct of the mayor and city council constituted an effective waiver or modifica-

tion of the extra work provision in the contract and that the removal of rock was extra work ordered and to be paid for by the city.

The judgment is affirmed.

FONTRON, J., dissenting.