Eduardo VALDEZ et al.,
Plaintiffs-Appellants,

v.

L. Paul APPLEGATE, District Manager, Albuquerque District, Bureau of Land Management, and Cecil D. Andrus, Secretary of the Interior, Defendants-Appellees.

No. 79–1636.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 21, 1980.

Decided March 5, 1980.

Rehearing Denied April 10, 1980.

James G. Watt, Denver, Colo. (Gale A. Norton, Mountain States Legal Foundation, Denver, Colo., with him on briefs), for plaintiffs-appellants.

Martin Green, Dept. of Justice, Washington, D. C. and James B. Grant, Asst. U.S. Atty., Albuquerque, N.M. (James W. Moorman, Asst. Atty. Gen., Raymond N. Zagone and Dirk D. Snel, Attys., Dept. of Justice, Washington, D. C., with them on briefs), for defendants-appellees.

Before HOLLOWAY, BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an appeal under 28 U.S.C. § 1292(a) from an interlocutory order denying a motion for a preliminary injunction to stay the implementation of various grazing permits issued under the Taylor Grazing Act, 43 U.S.C. § 315 et seq., and the Federal Land Policy and Management Act of 1976,

43 U.S.C. § 1701 et seq., and pertinent regulations, 43 C.F.R. §§ 4160.3(c) and 4.477. We granted a stay pending determination of this appeal and reverse.

The individual plaintiffs-appellants graze livestock on land within the Rio Puerco Grazing District. Plaintiff-appellant Mountain States Legal Foundation provides legal representation for its members who include individuals using District lands for grazing. The District contains about 500,000 acres of which about 393,000 acres are federal lands intermingled with private and state lands. New Mexico issues permits for approximately 29,000 acres of state land within the District.

*Natural Resources Defense Council, Inc. v. Morton,* D.C.D.C., 388 F.Supp. 829, 838–841, aff'd, 174 U.S.App.D.C. 77, 527 F.2d 1386, cert. denied 427 U.S. 913, 96 S.Ct. 3201, 49 L.Ed.2d 1204, holds that grazing permits are significant governmental action requiring an Environmental Impact Statement (EIS). The Bureau of Land Management (BLM) issued an EIS and then adopted the Rio Puerco Livestock Grazing Management Program (Grazing Program). In September and October 1978, BLM made grazing decisions pertaining to the Rio Puerco District and affecting 133 persons, of whom 33 are plaintiffs in this action. The decisions ordered grazing reductions. Each decision contained the following:

> "Pending decision on appeal, this decision will be placed in full force and effect, for the orderly administration of the range, beginning with the next grazing season on or after March 1, 1979."

On December 21, 1978, plaintiffs brought this suit to enjoin the implementation of the Management Program. They specifically attack (1) immediate effectiveness, (2) sufficiency of the EIS, (3) the grazing schedules, (4) the combination of individual allotments into community allotments, and (5) the exercise of federal control over state and private lands. After an evidentiary hearing the district court denied plaintiffs' motion for a preliminary injunction. It held that the plaintiffs had not shown likelihood of success on the merits, irreparable harm, and lack of injury to others and the public. A prompt appeal was taken. We stayed implementation of the Program until final decision of this court. The plaintiffs briefed the mentioned issues. After securing briefing extensions, the Secretary filed a late brief which asserts that the case is moot and ignores the issues presented by plaintiffs.

Mootness is claimed because of the following proviso in the November 27, 1979 Act covering appropriations for the Interior Department, Public Law 96–126, 93 Stat. 954, 956:

> "*Provided further,* That an appeal of any reductions in grazing allotments on public rangelands must be taken within 30 days after receipt of a final grazing allotment decision or 90 days after the effective date of this Act in the case of reductions ordered during 1979, whichever occurs later. Reductions of up to 10 per centum in grazing allotments shall become effective when so designated by the Secretary of the Interior. Upon appeal any proposed reduction in excess of 10 per centum shall be suspended pending final action on the appeal, which shall be completed within 2 years after the appeal is filed."

We recognize that "a statute passed during the course of litigation may make unnecessary a determination of the former controversy" and render the case moot. *Morrison Cafeteria Company v. Johnson,* 6 Cir., 344 F.2d 690, 692. The discussion of the "capable of repetition yet evading review" doctrine of the law of mootness, found in *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350, does not fit the facts with which we are confronted. See also *Crowell v. Mader,* —— U.S. ——, 100 S.Ct. 419, 62 L.Ed.2d 318, decided February 19, 1980.

On its face the 1979 Act affects only the plaintiffs' objection to immediate effectiveness when the grazing allotment reduction is 10% or more. Appended to the Secre-

tary's brief is a copy of BLM's "Instruction Memorandum No. 80–178," dated December 21, 1979. Near the top of its p. 3 is this statement:

"In the event of an [administrative] appeal, the amount of reduction in excess of 10% will be suspended until the appeal process is completed."

The Secretary apparently interprets the 1979 Act to mean that all reductions of less than 10% have immediate effectiveness and that reductions of 10% or more are suspended only to the amount of the excess. The plaintiffs assert that they have taken administrative appeals attacking the permits issued to them. The 1976 Land Policy and Management Act, 43 U.S.C. § 1701(a)(6) declares the policy of the United States to be that "judicial review of public land adjudication decisions be provided by law." See also *Perkins v. Bergland*, 9 Cir., 608 F.2d 803, 805–806 and especially n. 6. Immediate effectiveness is not consonant with judicial review, absent exceptional circumstances which the Secretary has not even claimed in his brief. Plaintiffs' contention that immediate implementation of the grazing reductions up to 10% must be justified by "the orderly administration of the range" remains viable.

██ The case is not moot. We must consider the validity of the court's denial of the preliminary injunction. The failure of the Secretary to respond to this issue does not relieve us of the responsibility of examining the record. At the outset it must be recognized that the case has not been tried on its merits. Plaintiffs say that they did not present all of their evidence at the preliminary injunction hearing. The determination of a motion for a preliminary injunction and a decision on the merits are different. *Penn v. San Juan Hospital, Inc.*, 10 Cir., 528 F.2d 1181, 1185.

██ Plaintiffs sufficiently demonstrated likelihood of success on the merits to the extent that such showing is required. See *Associated Securities Corp. v. Securities and Exchange Commission*, 10 Cir., 283 F.2d 773, 774–775, and *Blackwelder Furniture*

*Co. v. Seilig Manufacturing Co., Inc.*, 4 Cir., 550 F.2d 189, 193–196.

We disagree with the trial court's findings and conclusions that the plaintiffs have not shown irreparable harm. The BLM District Manager conceded that the EIS stated that the grazing decisions would force some permittees out of business and that the combined allotments would adversely affect breeding programs, cause weight loss, and require more time in moving cattle from one pasture to another. The trial court assumed that the Management Program will achieve its purposes. Plaintiffs challenge the assumption. The court ignored the possibility that some plaintiffs might not remain in the ranching business to reap the expected benefits. For the purposes of a motion for preliminary injunction the plaintiffs sufficiently established irreparable harm.

With regard to harm to other persons, the court said that delay was inequitable because other permittees are participating in the program and will not receive the benefits of the program without plaintiffs' cooperation. Again, the court assumed success of the program and plaintiffs deny the possibility of success. Resolution of the issue requires trial on the merits.

The public has an interest in protecting the range from overgrazing. The public also has an interest in the economic stability of the area and plaintiffs assert that such stability will be damaged by the loss of property values, the effect on the herds, the combination of individual holdings, and the exercise of control over private and state lands. Also, the public has an interest in "preserving the *status quo ante litem* until the merits of a *serious* controversy can be fully considered by a trial court." *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.*, supra, 550 F.2d at 197. The pertinent factors are inextricably entwined with the merits and should not be foreclosed by disposition on an interlocutory motion. We have a substantial controversy of importance to all who graze livestock on public lands.

The case should be promptly tried and determined on the merits. Until such determination the district court should enter an appropriate order maintaining the status quo by enjoining the implementation of the Rio Puerco Livestock Grazing Management Program.

Reversed and remanded for further proceedings in the light of this opinion.