Buckley et al., Appellants, *v.*
City of Cincinnati et al., Appellees.

[Cite as Buckley v. Cincinnati (1980), 63 Ohio St. 2d 42.]

(No. 79-1421—Decided July 2, 1980.)

*Messrs. Davis, Hengelbrok & Sachs,* and *Mr. James W. Hengelbrok,* for appellants Buckley and Brinker.

*Mr. Donald E. Hardin,* for appellants Dunaway and Nesmith.

*Mr. Philip S. Olinger,* acting city solicitor, and *Mr. Paul R. Berninger,* for appellees.

HOLMES, J. Ordinance No. 258-1977 of the city of Cincinnati purports to amend Section 1, Article XVII of the Administrative Code of the city of Cincinnati. As amended,[1] that section provides, in pertinent part, as follows:

"All persons hereafter appointed to positions in the city service shall be residents of the city of Cincinnati at the time of their appointment and shall continue to maintain their primary place of residence within the city at all times during their continued service with the city.

"All persons now holding positions in the city service and residing within the city shall continue to maintain their primary place of residence within the city at all times during their continued service with the city.

"All persons now holding positions in the city service not residing within the city shall, if they change their primary place of residence, establish and maintain their primary place of residence within the city at all times thereafter during their continued service with the city."

In their first proposition of law, appellants contend that the ordinance and administrative regulation have a retroactive effect upon their constitutional right to travel. For this reason, they assert, the ordinance and regulation are violative of Section 28, Article II of the Ohio Constitution, which provides, in part, that: "The General Assembly shall have no power to pass retroactive laws***."

---

[1] Prior to its amendment, Section 1, Article XVII, required, with certain exceptions, that all persons employed by the city become residents of Hamilton County within six months from the time of appointment or completion of a probationary period.

Appellants' contention is without merit. There is no constitutional right to be employed by a municipality while living elsewhere. *McCarthy* v. *Philadelphia Civil Service Comm.* (1976), 424 U.S. 645. It would reasonably follow that where no constitutional right exists, there can be no retrospective impairment of that right. If appellants possess a right to reside outside of the limits of the city of Cincinnati while maintaining their present employment, its source must be other than the Constitution.

It is true that, prior to the enactment of this ordinance, employees of the city of Cincinnati were permitted to reside where they wished within Hamilton County. They had the "right" to do so, in the sense that they were not forbidden to do so. This "right," however, was not a vested one, such that its subsequent impairment violates Section 28, Article II.

The ordinance under consideration was seemingly drafted to avoid the problem of retroactivity. It does not require current employees of the city of Cincinnati to divest themselves of property or to change their residence. It simply provides that if an employee desires to change his residence, he must move into, or remain within, the city of Cincinnati. The ordinance regulates future conduct, and is prospective in operation. Cf. *Fraternal Order of Police* v. *Hunter* (1975), 49 Ohio App. 2d 185.

In *Hunter,* the residency rule as promulgated by the Youngstown Civil Service Commission was significantly different than the Cincinnati ordinance considered herein. The Youngstown rule made any officer or employee not residing within the city limits after a specific date subject to dismissal. The effect of such a rule was to attach a punitive measure to the act of establishing a residence outside the city prior to the rule's passage. This is not of course the effect of the Cincinnati ordinance.

The ordinance at issue in this cause neither "destroy[s] an accrued substantive right," *Gregory* v. *Flowers* (1972), 32 Ohio St. 2d 48, paragraph three of the syllabus, nor changes the legal significance of past conduct. *Lakengren* v. *Kosydar* (1975), 44 Ohio St. 2d 199. Appellants' first proposition of law is, therefore, overruled.

In their second proposition of law, appellants contend that

the Cincinnati residency ordinance is void, because its enactment exceeds the power of the Cincinnati City Council under the city charter. We disagree.

Section 3, Article V of the Charter of the city of Cincinnati provides, in part, as follows:

"Except as provided in this charter, the council shall have no power to modify the provisions of the laws of the state of Ohio now or hereafter in effect relating to the civil service and civil service commissions.***"

Appellants assert that the residency ordinance conflicts with state civil service law. They point to R. C. 124.23 and 124.40. R. C. 124.23, as relevant herein, provides that:

"All applicants for positions and places in the classified service shall be subject to examination, which shall be public and open to all citizens of the United States***within certain limitations to be determined by the director of administrative services, as to citizenship, residence, age***."

R. C. 124.40(A) provides, in part, that:

"***The municipal civil service commission shall exercise all other powers and perform all other duties with respect to the civil service of such city***as***conferred upon the director of administrative services and the state personnel board of review with respect to the civil service of the state***."

It is appellants' position that R. C. 124.23, as affected by R. C. 124.40, vests exclusive control over the residency of city employees in the municipal civil service commission, and that Ordinance No. 258-1977, insofar as it attempts to usurp that control, conflicts with state law and is void. We are not persuaded by this construction.

An examination of R. C. 124.23 reveals that it grants to the municipal civil service commission the power to impose residency requirements upon those who apply for civil service positions and who wish to sit for a civil service examination. Under this section a municipal civil service commission may regulate "applicants for positions" in the classified service. The ordinance at issue in this cause does not attempt to regulate civil service applicants. Rather, it deals with residency requirements for "persons***appointed to positions," and "persons now holding positions" in the civil service of the city.

The ordinance does not attempt to regulate subject matter which is in the exclusive control of the Cincinnati Civil Service Commission; there is no conflict between state civil service law and the city ordinance *sub judice*.[2]

We believe that a reasonable construction of the Cincinnati charter provision under consideration herein leads to the conclusion that it allows council to pass laws relating to the municipal service, so long as they do not conflict with the provisions of state law. Because there is no conflict in this instance, the ordinance and resulting administrative regulation are valid. Appellants' second proposition of law is overruled.

For the foregoing reasons, the judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, BELL, P. BROWN, SWEENEY and LOCHER, JJ., concur.

BELL, J., of the Ninth Appellate District, sitting for W. BROWN, J.

---

[2] Nor is there a conflict between the ordinance and the rules of the Cincinnati Civil Service Commission. Prior to January 5, 1978, Section 4, Rule V, provided, in part, that "[a]ll applicants for positions***must be residents of Hamilton County***." After amendment, the rule now provides, in part, that "[a]ll applicants for positions***must be residents of the city of Cincinnati***."