**KANSAS CITY, KANSAS FRATERNAL ORDER OF POLICE, LODGE NO. 4; International Association of Firefighters Local No. 64; Theresa McBride; Joseph P. Odle; and John Schneider, Plaintiffs,**

v.

**CITY OF KANSAS CITY, KANSAS, a Municipal Corporation; Chester Owens; Richard Scherzer; Ed Alvey; Richard Ruiz; Bud Neath; Ron Mears; Jack Reardon, members of the City Council of Kansas City, Kansas, Defendants.**

Civ. A. No. 84–2316.

United States District Court,
D. Kansas.

Nov. 1, 1984.

plaint was amended on September 7, 1984.

Steve A.J. Bukaty, Blake & Uhlig, Kansas City, Kan., for plaintiffs.

Harold T. Walker, Asst. City Atty., Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on plaintiffs' motion for a preliminary injunction and defendants' motion for judgment on the pleadings or to dismiss. At a hearing on October 9, 1984, we provided all parties with an opportunity to present evidence and oral argument regarding both motions. For the reasons set out below, we will grant defendants' motion as to two of plaintiffs' four counts, and will deny plaintiffs' motion for a preliminary injunction.

Of the facts material to these two motions, most are a matter of public record. On July 21, 1983, defendant City of Kansas City, Kansas, (the City) by and through its city council (whose members are the individual defendants) enacted Municipal Ordinance No. 64504. Section 1 of this ordinance states the basic rule that all employees of the City must establish and maintain their permanent residence within the City limits throughout the period of their employment. An exception is made in section 2 for those employees residing in Wyandotte County; they need not establish a residence in Kansas City until and unless they change their place of permanent residence. Pursuant to section 3, all other current City employees are given fifteen months from the effective date of the ordinance (July 29, 1983) in which to establish a permanent Kansas City residence. Section 7 then provides that "any employee violating any of the provisions of this ordinance shall be subject to discharge from employment with the City of Kansas City, Kansas." The three individual plaintiffs in this action reside outside of Wyandotte County and thus face discharge from their employment if they fail to establish a permanent residence within the City by October 29, 1984.

Ordinance No. 64504 repealed two existing City ordinances. Essentially, these required that Kansas City, Kansas, police officers and fire fighters be bona fide residents of Wyandotte County. Neither ordinance, however, contained a clause such as section 7 of the new ordinance—expressly making violators subject to discharge from their employment.

Aside from the three named individuals, the plaintiffs in this case are Lodge # 4, Fraternal Order of Police (FOP) and Local # 64, International Association of Fire Fighters (IAFF) [collectively, "the Unions"]. Pursuant to the Kansas Public Employer-Employee Relations Act (PERA), K.S.A. 75–4321 to 4337, inclusive, each Union has entered into a "memorandum of understanding" with the City. Both such agreements were in force on July 21, 1983, and both contain a provision that discharge shall be only for "just cause." The parties are in agreement that neither memorandum of understanding contains a provision directly addressing the residency of City police officers and fire fighters.

Our research confirms that Kansas City, Kansas, is far from the first city to enact an ordinance of this kind. Starting some ten to fifteen years ago, challenges to residency ordinances began to appear in the reporters with some frequency. Absent unique factual circumstances (*e.g.*, grounds for estoppel, *see Lines v. City of Topeka*, 223 Kan. 772, 780, 577 P.2d 42, 49 (1978)), nearly every such challenge has been rejected. This is especially true of chal-

lenges based on the United States Constitution.

Ordinances such as No. 64504 have been upheld in suits alleging interference with municipal employees' right to travel—both interstate, *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 647, 96 S.Ct. 1154, 1155, 47 L.Ed.2d 366 (1976); *Lines,* 223 Kan. at 779, 577 P.2d 42; *Andre v. Board of Trustees of the Village of Maywood,* 561 F.2d 48, 52–53 (7th Cir. 1977), and intrastate (the "right to commute"), *Andre,* 561 F.2d at 52–53; *Wright v. City of Jackson, Mississippi,* 506 F.2d 900, 901 (5th Cir.1975). Other challenges have been based on the equal protection clause of the fourteenth amendment, claiming that ordinances which apply only to police officers and fire fighters create irrational classifications. Such challenges, too, have been rejected. *Detroit Police Officers Ass'n v. City of Detroit,* 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972), *dismissing for lack of substantial federal question, Detroit Police Officers Ass'n v. City of Detroit,* 385 Mich. 519, 190 N.W.2d 97 (1971); *Mogle v. Sevier County School District,* 540 F.2d 478, 484 (10th Cir.1976); *Wright,* 506 F.2d at 903; *Lines,* 223 Kan. at 780, 577 P.2d 42.

Various substantive due process challenges have been launched against residency ordinances. In *Mogle,* the Tenth Circuit rejected an assertion that such an ordinance created a "conclusive and irrebuttable presumption" that nonresidents could not properly perform their duties. 540 F.2d at 484–85. A vagueness challenge was rejected by the Kansas Supreme Court in *Lines,* 223 Kan. at 777, 577 P.2d 42 (rejecting claim that the term "residence" was overly vague). The same vagueness argument was rejected by the Massachusetts Supreme Judicial Court. *Doris v. Police Comm'r of Boston,* 374 Mass. 443, 373 N.E.2d 944 (1978). Yet a third substantive due process challenge was based on an ordinance's asserted "retroactivity" in forcing *current* nonresident employees to move within the city or face discharge. The Seventh Circuit rejected that theory in uphold-

ing the ordinance at issue in *Andre, supra,* 561 F.2d at 51.

Finally, the *Andre* court also discussed and rejected a claim that such an ordinance amounted to an "impairment of the obligation of contract," in violation of article 1, section 10, clause 1 of the Constitution. Although a union contract in that case permitted discharge only for "just cause," the court refused to find an impairment of that contract by the ordinance. 561 F.2d at 51. The Mississippi Supreme Court concurs. *Hattiesburg Firefighters Local v. Hattiesburg,* 263 So.2d 767 (Miss.1972).

We recount these numerous *unsuccessful* challenges only for the light they throw on the legal challenges stated in plaintiffs' four-count complaint. Counsel for plaintiffs conceded that such holdings had made it difficult for him to draft tenable objections to the ordinance in question. In fact, he listed the need to do extensive legal research as one reason for the plaintiffs' delay in filing their complaint.

Count I of that complaint alleges a denial of *procedural* due process. As more fully explained below, plaintiffs believe the ordinance's failure to make express provision for predischarge notice and a hearing renders it facially unconstitutional. In Count II, plaintiffs allege that Ordinance No. 64504 "is a retroactive law in violation of Article 1, section 10, clause 1 of the United States Constitution." Although this count appears to include elements of substantive due process, we will follow the parties' lead in referring to it as the "impairment of contract" count. Conceding that cases such as *Andre* would appear to foreclose this challenge, plaintiffs argue that *Andre* was wrongly decided and ask us to disregard it.

Plaintiffs' remaining two counts are grounded in state law. Count III alleges a violation of the Kansas Public Employer-Employee Relations Act (PERA), K.S.A. 75–4321 to 4337, inclusive. By Count IV, plaintiffs assert that defendants are equitably estopped to enforce Ordinance No. 64504. In support of this count, plaintiffs allege reasonable reliance on representa-

tions by defendants that no residency requirement would ever affect their employment status.

## I. *Defendants' Motion for Judgment on the Pleadings or to Dismiss (converted to Motion for Summary Judgment).*

Turning to the motions at hand, we first consider defendants' motion for judgment on the pleadings or to dismiss. At our October 9th hearing, we heard testimony from Mr. Andrew Alvey, President of FOP. We have also read three affidavits submitted on behalf of plaintiffs, and have noted the terms of collective bargaining agreements between certain of the parties. Since these matters have been considered in ruling on defendants' motion, we will treat that motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b), (c).

We consider defendants' motion first for the reason that plaintiffs' motion would be moot as to any counts on which defendants obtain summary judgment. Since we decline to enter such judgment on two of plaintiffs' four counts, we will subsequently consider plaintiffs' motion for a preliminary injunction.

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In considering such a motion, the court must examine all the evidence in a light most favorable to the opposing party. *Mogle v. Sevier County School District*, 540 F.2d 478, 482 (10th Cir.1976), *cert. denied*, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1976). Where different inferences could be drawn from conflicting affidavits and depositions, summary judgment should be denied. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In any event, the moving party must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037

(10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 36 (10th Cir.1975).

### A. *Count I—Procedural Due Process.*

Section 1 of the fourteenth amendment to the United States Constitution provides, in part, that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." It is now "well settled that municipal ordinances and the actions in office of municipal officials constitute state action and are within the prohibition of the Fourteenth Amendment." *McCoy v. Providence Journal Co.*, 190 F.2d 760, 764 (1st Cir.1951) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). *See also Cuyahoga River Power Co. v. City of Akron*, 240 U.S. 462, 464, 36 S.Ct. 402, 403, 60 L.Ed. 743 (1916).

The protected property interest claimed by these plaintiffs is their continued employment by the City. In determining the existence of a protected interest, we must remember that a property interest in employment can be created by ordinance or by contract. "In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). More specifically, we must determine if, under Kansas law, "there are such rules or mutually explicit understandings that support [the plaintiffs'] claim of entitlement to the benefit and that [they] may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Each of the contracts entered into between the City and the plaintiff Unions contains the following sentence: "Officers, excluding probationary officers, shall only be disciplined or discharged for just cause." FOP Contract, Article 14; IAFF Contract, Article 16. The Kansas Supreme Court has had occasion to construe a contract containing this identical provision. In fact, the parties to that contract were one of the current defendants (Kansas City, Kansas)

and one of the current plaintiffs (FOP). *See Gorham v. City of Kansas City, Kansas,* 225 Kan. 369, 590 P.2d 1051 (1979). The court there reached the following conclusion:

> Plaintiffs had a legitimate claim of entitlement to continued employment, absent a showing of just cause, under the express provisions of the collective bargaining agreement. This constitutes a property right.

225 Kan. at 374, 590 P.2d 1051. Applying the above-quoted *Perry* standard, the court thus held that "where discharge is 'for cause,' notice and hearing is required." 225 Kan. at 373, 590 P.2d 1051; *see Perry,* 408 U.S. at 599, 92 S.Ct. at 2698.

Section 7 of the challenged ordinance provides that "any employee violating any of the provisions of this ordinance shall be subject to discharge from employment with the City of Kansas City, Kansas." Neither here nor in any other section does this ordinance make *express* provision for the granting of notice and a hearing prior to an employee's discharge. Plaintiffs allege, as a *factual* matter, that the ordinance does not provide for notice and an opportunity to be heard. Defendants claim that Section 5 of the ordinance, providing a rather extensive definition of the term "permanent residence," demonstrates that the ordinance "envisions" notice and a hearing. Terming this difference of opinion a factual dispute, plaintiffs urge the denial of defendants' motion for summary judgment on this count.

Since this ordinance has yet to be applied, we assume plaintiffs are challenging the constitutionality of this ordinance on its face. Moreover, counsel for plaintiffs conceded to the court that this count raises no *substantive* due process objection. In other words, the question whether nonresidency status constitutes "just cause" for discharge is not an issue in the context of this count. Plaintiffs' objection is to the ordinance's asserted failure to provide the *procedural* due process elements of notice and a hearing.

The linchpin of plaintiffs' argument that we should deny defendants summary judgment on this count is their assertion that the dispute as to whether the ordinance provides for notice and a hearing prior to discharge is one of *fact*. If this were true, we would be forced to accept their allegation that such notice and a hearing are indeed not provided. But this view begs the question. Both the ordinance and the relevant union contracts have been produced in their entirety, and the parties express no disagreement as to their terms. We are also, of course, fully cognizant of those constitutional, statutory, and decisional authorities which mandate the provision of notice and a hearing. The construction of this ordinance is thus purely a question of law. Until the ordinance is actually applied, we fail to see how further factual presentation could affect our decision as to its *facial* constitutionality.

In passing on the constitutionality of this ordinance, we are cognizant of the Supreme Court's repeated admonition that

> if a construction of the statute is fairly possible by which a serious doubt of constitutionality may be avoided, a court should adopt that construction. In particular, this Court has been willing to assume a congressional solicitude for fair procedure, absent explicit statutory language to the contrary.

*Califano v. Yamasaki,* 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979) (court's citation, brackets, and internal quotations omitted). Both this court, *Parcell v. Kansas,* 468 F.Supp. 1274, 1276 (D.Kan. 1979), and the Kansas Supreme Court, *Lines, supra,* 223 Kan. at 775–76, 577 P.2d 42 (1978), have recognized this principle. Applying this mandate to the case at hand, we must reject plaintiffs' procedural due process challenge to Ordinance No. 64504.

■ Admittedly, one might reasonably construe this ordinance as making no provision for notice and a hearing prior to discharge. However, when construing a state statute (or an ordinance enacted by a state subdivision), a federal court must look beyond the actual text of the enactment.

Where a state's highest court has construed a statute or ordinance in a way which avoids a potential constitutional defect, such construction is impliedly incorporated into that statute or ordinance.

For instance, in *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), the Court considered a challenge to a New York statute providing a cause of action to any person whose name or picture is used by another without his or her consent and for purposes of trade or advertising. The plaintiff in that case charged that the statute was unconstitutional on its face because it permitted the imposition of liability without proof of knowing or reckless falsity. In an earlier case, the New York Court of Appeals had construed the statute to require proof of such state of mind. This judicial construction was determinative of the Supreme Court's ruling in the case. The opinion stated:

> The New York Court of Appeals, as the *Spahn* opinion demonstrates, has been assiduous in construing the statute to avoid invasion of the constitutional protections of speech and press. We, therefore, confidently expect that the New York courts will apply the statute consistently with the constitutional command.

385 U.S. at 397, 87 S.Ct. at 546.

The Sixth Circuit has recognized this incorporation principle in the due process context. In *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916 (6th Cir. 1980), the plaintiffs challenged a "drug paraphernalia" ordinance on the ground that certain of its provisions permitted conviction on a theory of "guilt by association." 638 F.2d at 933. While conceding that the text of the ordinance *was* overbroad, the court nonetheless rejected this challenge. The following explanation was given:

> It is well established that guilt must be based on personal action, statements, or knowledge, not on association with other persons suspected of criminal conduct. *Sawyer v. Sandstrom,* 615 F.2d 311, 316–17 (5th Cir.1980). Because Ohio law naturally incorporates this principle of

due process, we need not declare the list of logically relevant factors overbroad on its face. *City of Cincinnati v. Hoffman,* 31 Ohio St.2d 163, 166, 285 N.E.2d 714 (1972), *cert. denied and appeal dismissed,* 410 U.S. 920, 93 S.Ct. 1370, 35 L.Ed.2d 583 (1973).

638 F.2d at 933–34.

■ In the case at hand, each contract between the City and the Unions permits discharge only for "just cause." An identical contract term has been construed by the Kansas Supreme Court to give union members a "property interest" in their continued employment. *See Gorham, supra.* Because that court is the ultimate authority on the construction of Kansas contracts, this holding is impliedly incorporated into any ordinance governing the discharge of employees whose contracts of employment contain the same "just cause" provision. Ordinance No. 64504 is such an ordinance. As the Supreme Court stated in *Time, Inc. v. Hill,* "[W]e therefore, confidently expect that the [Kansas] courts will apply the [ordinance] consistently with the constitutional command." 385 U.S. at 397, 87 S.Ct. at 546. As so construed, the ordinance *does* include the procedural due process requirements of notice and a hearing.

We are strengthened in this view by two additional factors. First, the ordinance contains no explicit language which would *deny* a discharged employee notice and a hearing. In *Califano v. Yamasaki, supra,* the Court made reference to such a factor when it stated that "this Court has been willing to assume a congressional solicitude for fair procedure, *absent explicit statutory language to the contrary.*" 442 U.S. at 693, 99 S.Ct. at 2553 (emphasis added). Second, counsel for defendants stated during oral hearing that any employee discharged pursuant to section 7 of this ordinance *would* be granted all elements of procedural due process. We take such representations by counsel quite seriously, and have no reason to expect the defendants to disavow his pledge. As to Count I, then, we will grant defendants' motion for summary judgment.

We emphasize that our holding goes only to the *facial* constitutionality of this ordinance. Had any plaintiff actually been discharged without notice and hearing under this ordinance, we might have found that the *application* of the ordinance denied plaintiffs their right to procedural due process. At this point, no such discharge has occurred. Any challenge to the ordinance's application is therefore premature. Similarly premature is a decision as to what process a discharged employee would be due.

### B. *Count III—PERA.*

On October 2, 1975, the City elected to be governed by the provisions of the PERA. *See* K.S.A. 75–4321(c); *Gorham, supra,* 225 Kan. at 370, 590 P.2d 1051. Because units of state government are exempt from the federal Labor Management Relations Act, 29 U.S.C. § 152(2) (1976), the PERA was enacted to govern relations between Kansas governmental entities and their employees. *See generally* Goetz, *The Kansas Public Employer-Employee Relations Law,* 28 U.Kan.L.Rev. 243 (1980). An important provision of this Act requires that where the Public Employee Relations Board (PERB) has certified an employee organization as representing a majority of employees in an appropriate unit, that unit's governmental employer "shall meet and confer in good faith with such employee organization in the determination of *conditions of employment* of the public employees." K.S.A. 75–4327(b) (emphasis added). A governmental employer's willful refusal to do so constitutes a "prohibited practice." K.S.A. 75–4333(b)(5).

Since a governmental employer need meet and confer only as to "conditions of employment," the definition of that term is critical. For our purposes, a relevant question is whether an employee's residence status is a condition of employment. As Professor Goetz notes, the term's potentially broad scope is circumscribed by its statutory definition. For purposes of the PERA, "conditions of employment" include:

salaries, wages, hours of work, vacation allowances, sick and injury leave, number of holidays, retirement benefits, insurance benefits, prepaid legal service benefits, wearing apparel, premium pay for overtime, shift differential pay, jury duty and grievance procedures.

K.S.A. 75–4322(t).

Professor Goetz observes that "this definition narrowly confines the mandatory subjects of meeting and conferring to the economic aspects of employment and grievance procedures." Goetz, *supra,* at 269. This already narrow scope is further confined by K.S.A. 75–4326, which provides that "[n]othing in this Act is intended to circumscribe or modify the existing right of a public employer to: ... (c) Suspend or discharge employees for proper cause." The effect of this latter provision is to relieve a governmental employer from any duty to meet and confer with an employee organization regarding the suspension or discharge of employees for proper cause. One might infer from this provision that the suspension or discharge of employees *without* cause would fall within the definition of "conditions of employment." If so, a governmental employer would be required by the PERA to meet and confer with an employee organization regarding its right to enforce such suspensions or discharges. No one has alleged such refusal by the City to meet and confer on this subject.

Plaintiffs, however, draw an even stronger negative inference from K.S.A. 75–4326(c). In their view, the provision imposes a positive *prohibition* on the suspension or discharge of employees without cause. As noted above, the fourteenth amendment's due process clause would then require that notice and a hearing precede any such discharge. *Gorham,* 225 Kan. at 373, 590 P.2d 1051. Plaintiffs thus renew their objection to this ordinance on the ground that it makes no express provision for the granting of such notice and hearing. For the reasons set out in part I.A., we must reject this argument.

Plaintiffs' interpretation of K.S.A. 75–4326(c) leads them, however, to raise yet another objection to this ordinance. They argue that mere nonresidence is not "proper cause" for discharge. In support of this view, they cite the decision in *White v. City of Winfield Fire Department*, 384 So.2d 471 (La.App.1980). The court there held that a similar Louisiana statute permitting discharge only "for cause" required a showing "that the conduct of the employee impaired the efficiency of the public service." *Id.* at 473 (quoting *Leggett v. Northwestern State College*, 242 La. 924, 140 So.2d 5 (1962)). Plaintiffs allege that residency status is irrelevant to the issue of efficiency, and thus that this ordinance violates their asserted PERA right to be free from discharge without cause.

▉ Initially, we must reject this argument on the ground that K.S.A. 75–4326(c) imposes no positive obligation on the City to refrain from discharging employees without cause. The section merely removes from the City any obligation it might have had to meet and confer with the Unions regarding the discharge of employees *with* proper cause. Our reading of the statute is further strengthened by K.S.A. 75–4333, which defines "prohibited practices" under the PERA. Nowhere in its list of eight practices prohibited to employers does this section suggest that the nonretaliatory discharge of an employee, even without "proper cause," is a prohibited practice.

▉ Were we to accept plaintiffs' interpretation of K.S.A. 75–4326(c), however, we would still be forced to dismiss their PERA claim. If the PERA does prohibit discharge without cause, then it follows, almost by definition, that such discharge must necessarily be a "prohibited practice" as that term is defined in K.S.A. 75–4333. No other provision of the PERA even purports to define substantive limitations on the rights of governmental employers. Yet one alleging the commission of a "prohibited practice" has no right to an immediate judicial hearing on his claim. Rather, "any controversy concerning prohibited practices may be submitted to the [Public Employment Relations B]oard." K.S.A. 75–4334(a). "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in the district court." K.S.A. 75–4334(b). The record is devoid of any indication that plaintiffs exhausted this administrative remedy prior to filing this suit.

The Kansas Supreme Court has held: "It is a familiar doctrine that administrative remedies should be exhausted before resort is made to the courts. . . . Where an administrative remedy is provided by statute, such remedy ordinarily must be exhausted before a litigant may resort to the courts." *Pecenka v. Alquest*, 232 Kan. 97, 99–100, 652 P.2d 679, 682 (1982). As to state law claims, a federal court must apply the state's substantive law regarding exhaustion of administrative remedies. *Transcontinental & Western Air, Inc. v. Koppal*, 345 U.S. 653, 656, 73 S.Ct. 906, 907, 97 L.Ed. 1325 (1953). Plaintiffs' attempt to invoke the provisions of the PERA must thus be rejected until such time as they have exhausted their administrative remedies. Accordingly, we will grant defendants' motion for summary judgment on Count III of the complaint.

### C. *Count IV—Estoppel.*

Under proper circumstances, a Kansas municipality may be estopped to enforce a residency ordinance. Such was the holding in *Lines v. City of Topeka*, 223 Kan. 772, 577 P.2d 42 (1978). In that case, a nonresident city employee was discharged on the ground that he had violated an ordinance similar to the one at issue here. Prior to his discharge, however, the city commission had voted to amend the ordinance by further defining the term "residence." The commission also agreed to give the employee a reasonable period of time *after* the amendment's effective date in which to establish his residence within the city. Although the proposed amendment was never enacted, the employee was summarily dis-

charged for violation of the unamended ordinance.

Under those circumstances, the Kansas Supreme Court held the city estopped to enforce its residency ordinance against that employee. The court stated the following elements of a successful estoppel claim:

A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.

*Lines*, 223 Kan. at 780, 577 P.2d 42.

In Count IV of their complaint, these plaintiffs allege that

32. Prior to the enactment of Municipal Ordinance No. 64504 on July 21, 1983, members of Plaintiff Unions were told, or otherwise led to believe, that no residency requirement would ever effect (sic) their employment status during their tenure as police officers or firemen for Defendant City.

35. Because members of Plaintiff Unions have relied upon representations by Defendants that no residency requirement would ever effect (sic) their employment status, Defendants are estopped from enforcing Municipal Ordinance No. 64504.

The reasonableness of plaintiffs' reliance was allegedly enhanced by the City's failure to enforce its prior ordinances requiring police officers and fire fighters to reside within Wyandotte County. Through the affidavit of plaintiff John Schneider, plaintiffs assert that they would be severely prejudiced if this ordinance were now enforced as to them.

Defendants deny that they ever represented to plaintiffs that a residency ordinance would not be enforced. Moreover, they object to the conclusory nature of plaintiffs' allegations. Neither in their complaint nor in their briefs have plaintiffs revealed the name of the city officials upon whose representations they relied, or the conditions which might have justified their reliance thereon.

■ The parties clearly disagree as to whether defendants did indeed make the alleged representations. While plaintiffs' allegations in this regard are rather conclusory, we believe they sufficiently set out the elements of estoppel enumerated by the Kansas Supreme Court in *Lines*. The summary judgment remedy is a drastic one and should be applied with caution in order to preserve a litigant's right to trial. *Machinery Center, Inc. v. Anchor National Life Ins. Co.*, 434 F.2d 1, 6 (10th Cir.1970). Accordingly, we will deny defendants' motion for summary judgment on Count IV of the complaint.

D. *Count II—Impairment of Contract.*

Like their estoppel claim, Count II of plaintiffs' complaint relates only to section 3 of the disputed ordinance. That section grants current nonresident employees fifteen months from the effective date of the ordinance in which to establish a permanent residence within Kansas City. As stated in Count II, plaintiffs allege that

22. The effect of Municipal Ordinance No. 64504 is to attach a newly-created punitive measure to the act of establishing a residence outside the City of Kansas City, Kansas, prior to the passage of Municipal Ordinance No. 64504.

23. Municipal Ordinance No. 64504 is a law which attempts to penalize the membership of Plaintiff Unions for transactions already past, and as such is a retroactive law in violation of Article I, Section 10, clause 1 of the United States Constitution.

The cited constitutional clause prohibits two different types of retroactive (or "retrospective") laws—those which impair the obligation of contract and those which are enacted *ex post facto*. Yet we note from the plaintiffs' briefs that they rely, in part, on yet a third theory for recovery under Count II. The cases they cite in support of

this theory involve substantive due process. Under certain circumstances, all three of these theories may be implicated. Because plaintiffs are opposing a motion for summary judgment, their allegations must be liberally construed. We therefore consider the sufficiency of Count II's allegations under each of these three theories.

■ The parties refer to this count as one based on "impairment of contract." Although the cited contract clause refers to powers denied the *states*, "it is no longer open to question that a bylaw or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law ... that it may properly be considered as a law, within the meaning of the contract clause." *E & E Hauling, Inc. v. Forest Preserve District of Du Page County, Illinois*, 613 F.2d 675, 678 (7th Cir.1980) (court's quotation marks and brackets omitted). Moreover, a municipal ordinance may be found to have impaired a contract as to which the enacting city is *itself* a party. *Id.*

The United States Supreme Court, in an analogous case, has outlined the proper procedure for analyzing an impairment of contract claim:

Before we can find impairment of a contract we must find an obligation of the contract which has been impaired. Since the contract here relied upon is one between a political subdivision of a state and private individuals, settled principles of construction require that the obligation alleged to have been impaired be clearly and unequivocally expressed.

*Keefe v. Clark*, 322 U.S. 393, 396–97, 64 S.Ct. 1072, 1073–74, 88 L.Ed. 1346 (1944).

As an initial matter, we see no term in either Union contract which explicitly relates to the residency status of employees. Moreover, plaintiffs concede that the ordinances repealed by the one at issue here also required police officers and fire fighters to reside within Wyandotte County. The Kansas Supreme Court has held that "all existing applicable or relevant and valid statutes, *ordinances*, regulations, and settled law of the land at the time a contract is made become a part of it and must be read into it just as if an expressed provision to that effect were inserted therein, except where the contract discloses a contrary intention." *Steele v. Latimer*, 214 Kan. 329, 336, 521 P.2d 304, 310 (1974) (emphasis added). Neither union contract discloses such a "contrary intention." Indeed, each contains the following clause: "This Memorandum of Understanding supercedes (sic) and cancels all previous agreements, oral or written, and all existing unwritten practices between the City and the members of the Union and constitutes the entire memorandum between the parties, *except as to those areas of employment not covered herein which are subject to city ordinances existing at the date of this memorandum.*" FOP Contract, Article 29; IAFF Contract, Article 35. By simply maintaining this residency requirement, Ordinance No. 64504 impairs no residency-related term of these contracts.

Plaintiffs, however, suggest various other contract terms which this ordinance might impair. First, they renew their assertion that the ordinance fails to provide for notice and a hearing prior to discharge. Since employees may be discharged only for "just cause," such notice and a hearing must be granted prior to discharge. Plaintiffs continue:

Thus, any discharge because of violation of the Ordinance would not be for just cause and consequently, the employees would be divested of their contractual right to continued employment. Therefore, a residency ordinance which does not provide for procedural due process protection necessarily violates the impairment of obligations of contract clause contained in Article I, Section 10 of the Constitution.

Plaintiffs' Brief in Opposition to Defendants' Motion for Judgment on the Pleadings or to Dismiss, at 14. We have already noted the flaws in this argument. Because plaintiffs may only be discharged for "just

cause," the Kansas Supreme Court's decision in *Gorham, supra,* has incorporated procedural due process protections into this ordinance. The ordinance thus *does* provide for notice and a hearing prior to discharge, and *does not* impair the Union contracts.

Plaintiffs' second impairment of contract argument relies on a statement by defendants' counsel that they do not view a discharge pursuant to this ordinance as subject to the grievance procedure set out in the Union contracts. Plaintiffs contend that "the refusal of the City to honor such provisions effectively impairs their obligation to (sic) contract, as guaranteed by Article I, Section 10, Clause 1 of the United States Constitution." Plaintiffs' Supplemental Brief in Support of their Motion for Preliminary Injunction, at 5. We have already noted that since the ordinance has yet to be applied, any decision as to what process these plaintiffs would be due is premature at this time. *See* part I.A., *supra.* This argument is therefore similarly premature.

As a third impairment of contract argument, plaintiffs contend that Ordinance No. 64504 goes beyond the scope of earlier residency ordinances by imposing an explicit discharge penalty for its violation. Because we view this as a substantive due process argument, we will delay further explanation and discussion of this argument until a later time.

Although Count II does refer to "attempts to penalize the membership of Plaintiff Unions for transactions already past," plaintiffs make no apparent attempt to label this ordinance an *ex post facto* law. Any attempt to do so would clearly have been futile. The Supreme Court reiterated in *Galvan v. Press,* 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954), that "the *ex post facto* Clause applies only to prosecutions for crime. . . . It would be an unjustifiable reversal to overturn a view of the Constitution so deeply rooted and so consistently adhered to." 347 U.S. at 531, 74 S.Ct. at 742 n. 4. In considering a similar residency ordinance, the Massachusetts Supreme Ju-

dicial Court rejected an *ex post facto* challenge on this very ground—noting that such an ordinance "is not a criminal or penal statute." *Doris v. Police Comm'r of Boston,* 374 Mass. 443, 373 N.E.2d 944, 949 (1978).

It has been noted that

If a retrospective act which is neither an *ex post facto* law nor one impairing the obligation of a contract should nevertheless operate so as to take away a right of property, it may still be unconstitutional and void, not because it is retrospective, but by reason of its repugnancy to the Fourteenth Amendment of the Federal Constitution guaranteeing due process of law. . . . Retrospective legislation is prohibited under the Fourteenth Amendment when it divests any private vested right or interest.

16A Am.Jur.2d § 664 (1979). Essentially, the fourteenth amendment's prohibition on retrospective laws bars the imposition of retroactive civil penalties in much the same way as the *ex post facto* clause bars the imposition of retroactive criminal penalties. *See* 16A Am.Jur.2d § 661 (1979).

The term "retrospective law" has been given a broad definition. In a passage which "has met with judicial favor," *id.,* Justice Storey defined the term as follows:

Upon principle, every statute that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, *or attaches a new disability, in respect to transactions or considerations already passed,* must be deemed retrospective.

*Society for the Propagation of the Gospel v. Wheeler,* 22 Fed.Cases 756, 767 (C.C.D. N.H.1814) (No. 13,156) (emphasis added). Quoting this definition, the court in *Fraternal Order of Police v. Hunter,* 49 Ohio App.2d 185, 360 N.E.2d 708, 713 (1975), *motion overruled, cert. denied,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976), concluded that a similar ordinance deprived municipal employees of their substantive due process rights. More specifically, the court deemed that ordinance to have divested the employees' vested rights to reside

outside of the city limits. *Id.*, 360 N.E.2d at 714. Five years later, the Ohio Supreme Court indicated its approval of the *Hunter* court's reasoning. *See Buckley v. City of Cincinnati*, 63 Ohio St.2d 42, 406 N.E.2d 1106 (1980).

As plaintiffs concede, other courts have disagreed with the Ohio courts' view of such ordinances. The Seventh Circuit, for instance, rejected a retrospectivity challenge to a clause requiring current employees to establish a city residency within a two to four-year period. *Andre v. Board of Trustees of the Village of Maywood*, 561 F.2d 48 (7th Cir.1977). That court's reasoning was as follows:

> We note in addition that the residency ordinance requires present Maywood employees to establish residency within the Village by specified future dates. The ordinance does not penalize those employees living outside Maywood for having so resided in the past. Under the terms of the ordinance, an employee will be charged with a violation of the residency ordinance not because the employee resided outside Maywood in the past, but rather, an employee will be charged with a violation for failure to establish a Maywood residency within the two or four-year period allowed to them to establish such a residency. As such, the challenged ordinance cannot be said to penalize activity which was otherwise lawful in the past, and, hence, cannot be considered retrospective in application.

561 F.2d at 51. In *Hattiesburg Fire Fighters Local v. Hattiesburg*, 263 So.2d 767 (Miss.1972), the Mississippi Supreme Court reached the same conclusion as the Seventh Circuit. The Mississippi court approved an ordinance granting current employees only *sixty days* in which to establish a Hattiesburg residence. 263 So.2d at 772.

On questions of federal constitutional law, this court is bound only by holdings of the United States Supreme Court and the Tenth Circuit Court of Appeals. Neither court has yet passed on this question. Thus, the cases cited in the preceding two paragraphs are at best persuasive authority. In examining the two Ohio cases, we note the following infirmities. The *Hunter* court itself issued this disclaimer:

> The city of Youngstown and its employees are in a unique situation relative to the question of residency requirement. As discussed previously herein, the city of Youngstown had no valid residency requirement because of the conflict with the Charter and the lack of power of the police chief to promulgate such a requirement so that *the question arising in relationship to retroactivity is unique only to the instant case under its facts.*

360 N.E.2d at 712 (emphasis added). As we have already noted, Kansas City, Kansas, did have a valid residency ordinance at the time Ordinance No. 64504 was enacted. Although plaintiffs insist that the explicit discharge provision in the new ordinance constitutes "a new disability," and thus falls within Justice Storey's definition of a retrospective law, we feel compelled to note this factual distinction between *Hunter* and the instant case. Moreover, the Ohio Supreme Court's approval of *Hunter* in its *Buckley* opinion was obviously dicta. In the first place, the ordinance at issue in *Buckley* was not even retrospective in effect. And second, the *Buckley* ordinance had been challenged solely on *state* constitutional grounds.

Even if these Ohio cases did not suffer from these weakening factors, we would adopt the position taken by the Seventh Circuit and the Mississippi Supreme Court. We agree entirely with the reasoning of the Seventh Circuit in *Andre*, set out above. Because this ordinance would penalize only future conduct (*i.e.*, failure to establish a residence within Kansas City, Kansas), it has no retrospective effect. The situation would be entirely different had the ordinance provided that no employee residing outside the City on the date of enactment could remain on the payroll, *regardless* of his or her future conduct. Such an ordinance would indeed impose "a new disability in respect to transactions or considerations already passed." *See Wheeler, supra.* Since that was not the

case here, we see no deprivation of substantive due process.

Although we have thus far failed to find support for Count II under any of these three theories of retroactivity, we decline to grant summary judgment for defendants on this count. This is because up to this point we have considered only the *written* contracts between the City and the Unions. We now consider the effect on this count of the representations allegedly made by the defendants to the plaintiffs regarding non-enforcement of residency ordinances.

Under Kansas law, "the terms of a written contract may be varied, modified, waived, annulled, or wholly set aside by any subsequent executed contract whether such subsequent executed contract be in writing or parol." *Owens v. City of Bartlett*, 215 Kan. 840, 844, 528 P.2d 1235, 1240 (1974). This rule applies even where the promisee is a municipality. *Id.* If, as plaintiffs allege, responsible officials of the City orally informed their employees that the residency ordinance (incorporated by reference into the Union contracts) would never be enforced, defendants might be found to have waived their right to enforce that term. If so, an attempt to enforce the current residency ordinance could impair the Union contracts as thus modified.

■ We stress that we have yet to see evidence to support such a finding of modification. However, for purposes of this summary judgment motion, we will assume that plaintiffs can prove their allegations. Denial of defendants' motion for summary judgment on this count is thus appropriate at this time.

## II. *Plaintiffs' Motion for Preliminary Injunction.*

■ We now turn to plaintiffs' motion for a preliminary injunction. Because this case is not scheduled for trial until sometime next year, plaintiffs seek to have the City and its councillors enjoined from enforcing the challenged ordinance prior to entry of a final judgment. Unless this injunction is granted, the City would be free to enforce even that provision of the ordinance providing for discharge of current employees residing outside of Wyandotte County who do not establish a residence within the City by October 29, 1984. Having dismissed Counts I and III of the complaint, we must determine whether plaintiffs are entitled to a preliminary injunction on the basis of Count II or Count IV.

The parties agree on the appropriate legal standard for obtaining a preliminary injunction:

> The moving party must establish: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Otero Savings & Loan Ass'n v. Federal Reserve Bank of Kansas City, Mo.*, 665 F.2d 275, 278 (10th Cir.1981). Moreover:

> The Tenth Circuit has adopted the Second Circuit's liberal definition of the "probability of success" requirement. When the other three requirements for a preliminary injunction are satisfied, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."

*Id.* (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953)).

Of these four elements, plaintiffs have shown two—a threat of irreparable injury, and that the injury they would suffer from the ordinance's enforcement outweighs any damage to the City that a delay might cause. The affidavit submitted by plaintiff John Schneider illustrates various threatened irreparable injuries. These include: (1) the loss of favorable home mortgage interest rates, (2) the need to pay for two

residences until the first can be sold, (3) possible marital separations, and (4) loss of private part-time jobs available only to police officers.

Against these potential injuries to plaintiffs, counsel for defendants suggest only that the City will lose property tax revenue if the ordinance is enjoined. No one has suggested that the individual defendants would in any way be harmed by an injunction. The balance of hardships thus clearly favors the plaintiffs in this case.

Were these the only two requirements, we would not hesitate to issue a preliminary injunction. As noted above, however, we must also consider the public interest and the probability of plaintiffs' success on the merits. Either of these two factors would bar the issuance of an injunction.

### A. *The Public Interest.*

In passing on a motion for a preliminary injunction, we sit as a court of equity. As such, we owe a special obligation to the public interest. The Supreme Court has held that

> where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, *though the postponement may be burdensome to the plaintiff.*

*Yakus v. United States,* 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944) (emphasis added).

Plaintiffs assert that the requested injunction would actually *serve* the public interest. They make the following argument: If this ordinance is enforced, many nonresident employees may resign rather than move within the City limits. Until those employees could be replaced, perhaps for six months, the City would be understaffed in the vital areas of police and fire protection. Although administrative personnel might fill the vacancies for that six-month period, this would slow the completion of administrative tasks. Even

when new police and fire employees are hired, they would be less effective than the veterans who would have resigned.

The defendants offer the following rebuttal to these arguments: Only ten City employees are now in violation of the ordinance. Even if all ten chose to resign, their duties could be performed by administrative personnel at an acceptable cost to administrative efficiency. In any event, the residents of Kansas City, Kansas, would eventually enjoy the additional protection of having police officers and fire fighters close at hand in case of emergency.

We find it unnecessary to pass on the relative merits of these arguments. Plaintiffs have not alleged that the ordinance was enacted through irregular procedures or as a result of fraud. Moreover we must assume that the City council was aware of the factors cited by the plaintiffs when it chose to enact Ordinance No. 64504. The scope of our inquiry is thus limited. The Tenth Circuit, in a slightly different context, set down the following guidelines:

> We may not test in the balances of judicial review the weight and sufficiency of the facts to sustain the conclusion of the legislative body. We may only inquire whether it so lacks any reasonable basis as to be arbitrary. Debatable questions as to reasonableness are not for the courts, but for the legislature, which is entitled to form its own judgment. We may not set aside the ordinance because compliance with it is burdensome.
>
> \*    \*    \*    \*    \*    \*
>
> With the wisdom or expediency of the legislative enactment we are not concerned. Those are questions exclusively for legislative determination.

*Independent Dairymen's Ass'n, Inc. v. City and County of Denver,* 142 F.2d 940, 942 (10th Cir.1944).

Clearly, the arguments advanced by defendants constitute a reasonable basis for enacting this ordinance. As to the residents of Kansas City, the defendant city councillors are best qualified to determine

the public interest. We thus conclude that the public interest of such residents is served by this ordinance.

Such conclusion would not necessarily end our inquiry as to the public interest *in general.* Even while serving the public interest of Kansas City residents, an ordinance might *disserve* the public interest of surrounding areas. If this harmful effect on outsiders exceeded the benefit to Kansas City residents, we would conclude that the ordinance did not serve the general public interest. In this case, however, plaintiffs have alleged no such harm to surrounding areas. Their argument focuses entirely on the asserted impairment of police and fire protection for Kansas City residents. We have no reason to believe that the public interest of non-City residents will be impaired. Accordingly, our conclusion that the ordinance serves the public interest of Kansas City residents stands as our determination of the general public interest as well.

### B. *Probability of Success on the Merits.*

The fourth and final element to be considered is the probability that plaintiffs will prevail on the merits of their complaint. The need for such a requirement is obvious; justice would not be served by enjoining the enforcement of an ordinance that was likely to be upheld at trial. Because plaintiffs have failed to establish all of the first three requirements, they should rightfully be forced to show a "substantial likelihood" of success on the merits. *Otero, supra,* 665 F.2d at 738. As we view the matter, however, the proper standard is not important. Plaintiffs have failed to meet even the more liberal standard of raising "serious, substantial, difficult and doubtful" questions regarding the merits. *See id.*

The result under both of the remaining counts (*i.e.* estoppel and impairment of contract) will turn on essentially the same set of facts. Plaintiffs must prove that defendants represented to them that residency requirements such as Ordinance No. 64504 would *never* be enforced. To establish estoppel, plaintiffs must also prove that they relied on these representations, that that reliance was reasonable, and that they would be prejudiced by enforcement of the ordinance at this point. *See Lines, supra,* 223 Kan. at 780, 577 P.2d 42.

Plaintiffs' success on their impairment of contract count requires proof that the alleged representations, whether express or implied, amounted to a modification of the written Union contracts. We note only two of the elements needed to prove such modification. First, Kansas law provides that "to modify an existing agreement, either by expressed assent or by assent implied from conduct of the parties, the agreement to modify must be supported by an independent consideration." *Augusta Medical Complex, Inc. v. Blue Cross of Kansas, Inc.,* 227 Kan. 469, 474, 608 P.2d 890, 894 (1980). In the context of this case, that would require evidence of consideration passing from FOP and IAFF to the City sometime *after* the current Union contracts were executed. Second, the plaintiffs must show that City officials were acting within the scope of their authority when they agreed to modify the Union contracts. In an analogous situation, the Kansas Supreme Court held:

> The mayor could not give validity to a claim by acknowledging its justice. For that matter, if every member of the city government, *acting independently and not in their organized capacity as the city commission,* had said or done the same, no contract, no legal obligation would have followed.

*Water Co. v. City of Wichita,* 98 Kan. 256, 258, 158 P. 49 (1916) (citation omitted and emphasis added), *cited in Owens, supra,* 215 Kan. at 846, 528 P.2d 1235. Thus any modification must have been adopted, or at least ratified, by the City council *acting as a group.*

Plaintiffs were not required, of course, to present all of their evidence at the preliminary injunction hearing. "The determination of a motion for a preliminary injunction and a decision on the merits are differ-

ent." *Valdez v. Applegate,* 616 F.2d 570, 572 (10th Cir.1980). However, plaintiffs must present more than mere allegations. In considering a motion for preliminary injunction, the burden is on the movant to establish his right to such relief. *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir.1975).

At the hearing on this motion, we specifically asked plaintiffs' counsel if he intended to present witnesses who could testify to those representations alleged to justify invocation of the estoppel doctrine. He declined to do so at that time, stating that he would rely on our duty to accept plaintiffs' allegations as true. Because defendants offered no affidavits or other evidence to rebut those allegations, we chose to accept them as true for purposes of defendants' motion for summary judgment. As we have just noted, however, a preliminary injunction may not be obtained on the basis of mere allegations. Nonetheless, even crediting all of plaintiffs' allegations as true, we fail to detect any "serious, substantial, difficult and doubtful" questions as to the merits of their complaint.

All that plaintiffs have alleged, through their complaint and through their counsel's oral argument, is that certain unnamed City officials, perhaps including a "former mayor," told unnamed City employees that residency ordinances would never be enforced. We don't know whether those representations were made by individual officials over drinks at a local club, or by a quorum of the City council in the mayor's office. Only if the latter was more nearly the case would plaintiffs have raised a serious question as to justifiable reliance. Yet they have failed to proffer even a single affidavit containing averments to that effect. Even less clear is what consideration, if any, plaintiffs might have provided in return for an oral modification of the Union contracts.

These are by no means the only unanswered questions regarding the merits of plaintiffs' two remaining counts, but they suffice to dispel any claim that plaintiffs have raised "serious, substantial, difficult

and doubtful" questions for our consideration. Plaintiffs have thus failed to meet even the more liberal "probability of success" standard. As was true of their failure to prove compatibility of their claim with the public interest, plaintiffs' failure to meet this "probability of success" standard requires a denial of their motion for a preliminary injunction.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is granted as to Counts I and III, and denied as to Counts II and IV.

IT IS FURTHER ORDERED that plaintiffs' motion for a preliminary injunction is denied.